ALOIS VICHEREK, as President of the Czechoslovak Red Cross, an Unincorporated Association, Appellant, *v.* JAN PAPANEK et al., Respondents.

First Department, March 31, 1953.

*Martin Popper* of counsel (*Benjamin Spiegel* with him on the brief; *Wolf, Popper, Ross, Wolf & Jones,* attorneys), for appellant.

*Marvin Schwartz* of counsel (*Sullivan & Cromwell,* attorneys), for Jan Papanek, respondent.

*Abe Wagman* of counsel (*Wendell P. Brown* and *P. Hodges Combier* with him on the brief; *Nathaniel L. Goldstein, Attorney-General*), for State of New York, respondent.

BERGAN, J. The action was instituted in 1948 by Alois Vicherek, "as President of the Czechoslovak Red Cross, an unincorporated association" against defendants Jan Papanek and the Manufacturers Trust Company.

The complaint alleges the appointment of Papanek as agent of the Czechoslovak Red Cross in the United States in 1943 to organize relief for the suffering population of Czechoslovakia during the last war and to raise money in this country to alleviate this suffering.

The complaint continues that in February, 1948, Papanek caused the balance of the account of the money which had thus been raised and which was held by the Prague Credit Bank in New York to be transferred to the defendant Manufacturers Trust Company for deposit in the personal account of defendant Papanek. This sum was $115,744.99.

Shortly thereafter, it is alleged, Papanek withdrew the round sum of $100,000, " converted and appropriated " the money to his own use, and thereby deprived the Red Cross of the use and benefit of the fund.

Knowledge of the course of these transactions is charged by plaintiff to the Manufacturers Trust Company; the funds are treated in the complaint as trust funds; the termination of all authority in defendant Papanek is alleged; and recovery for

the whole amount withdrawn from the Prague Credit Bank is sought both against Papanek and the Manufacturers Trust Company on several distinct theories of liability.

Defendant Papanek's answer alleges that since February 25, 1948, when the Government of Czechoslovakia was seized by the communists, the Red Cross of that country had ceased to function in its former character, its personnel had been purged and replaced with communists and that its functions and activities had become so changed that it was not possible to carry out the charitable purposes of the contributors to the fund.

This defendant asked, therefore, that the court administer the fund under its cy pres powers expressed in section 12 of the Personal Property Law. The Attorney-General was added as a party and also asked that the court administer the fund in consonance with the purposes for which it was gathered together. The withdrawal of the fund was effected the day after the communist coup in Czechoslovakia.

The court at Special Term thereafter granted an application made by Papanek and the Attorney-General to examine Vicherek before trial. There was a modification here (280 App. Div. 773) in respects not material to the basic right of examination; and the order as modified was affirmed. Plaintiff then moved to modify the order for examination so as to substitute Frantisek Vavricka as the person to be examined instead of Vicherek on the ground Vicherek's health should excuse him from examination. This was denied at Special Term; there was an affirmance here (281 App. Div. 656) and the order of this court directed the examination.

Plaintiff moved on December 22, 1952, for an order '' substituting Mr. Eduard Tuma, the successor in office of Alois Vicherek and the present President of the Czechoslovak Red Cross '' as the officer in whose name the action shall be continued. The court at Special Term denied the application '' with leave to renew after the plaintiff has complied with the previous orders of this Court directing an examination before trial.''

It is from the order entered on that decision that one appeal is here; the other is from the denial of the motion '' for a rehearing of plaintiff's motion for substitution upon the additional facts and papers submitted herewith '' for an order, as sought in the original motion.

Plaintiff's papers on the original motion seem to us to be defective in respect of the proof that plaintiff had been succeeded by Tuma in the office and rights alleged in the complaint.

The affidavit was by a New York attorney who said he had been " advised " that elections had been held in Czechoslovakia with the termination of Vicherek's authority.

Proof of this was a letter, also written in New York by a " Jiri Nosek " who signed himself as a " Delegate " of the Czechoslovakia Red Cross which " informed " the attorney of the election. This is not sufficient proof of the facts relied on. We think there has been sufficient proof in the second application, however, to show prima facie that Tuma now holds the office; and to present squarely the question of the right of substitution of the new officer.

Appellant argues that the court must grant the order of substitution; respondents say that the right to substitution and continuance of the action in the name of the new officer is discretionary to the extent, at least, that the judicial order authorizing such a continuance may be withheld until the party already in the action has complied with the previous orders of the court relating to his examination. This view of the discretionary power of the court was adopted at Special Term and we regard the motion as having been correctly decided within the frame of the court's powers.

The statute (General Associations Law, § 12) authorizes an action or special proceeding to be " maintained by " the president of an unincorporated association for or upon which all the associates may maintain the action by reason of their joint or common interest in the subject matter, and the same statute (§ 14) provides in effect that in the event the officer maintaining the action is out of office, that the court " must make an order, directing it to be continued " by his successor.

If the statutory language is read literally, the words " must make an order " would impose a mandatory judicial duty without regard to the course of conduct followed by the predecessor officer or by the association, in respect of the utilization of facilities and machinery afforded by the court. It would be easy to demonstrate that in procedural questions it has been necessary sometimes to construe the mandatory " must " as the permissive " may ", since courts are required to manage their proceedings in the light of their experience and to regard as reasonably intended the procedural directions received from the Legislature.

A good example of this, and one rather closely related in spirit and purpose to the statute now before us, has been the construction given judicially to section 84 of the Civil Practice

Act, which provides that in the event of the death of a sole plaintiff or a sole defendant, if the cause of action survives or continues, the court " must allow or compel the action to be continued by or against his representative or successor in interest ". The language and procedural function of this section and section 14 of the General Associations Law seem to us closely analogous.

In *Coit* v. *Campbell* (82 N. Y. 509 [1880]) the court had before it the construction of section 757 of the Code of Civil Procedure, the predecessor of section 84 of the Civil Practice Act, and identical with its present pertinent text. The action was brought in 1867 in equity; both defendants had died before 1874; plaintiff moved to revive and continue the action.

The Special Term denied the application; the General Term affirmed, and the Court of Appeals, by RAPALLO, J., held that where laches existed to the extent that in equity it would be regarded in the practice of the court as preventing the prosecution of the action, the court retained a discretion to deny a continuance notwithstanding the form of the statute.

Two years later the court held flatly that in an action at law there was no discretion about the right of successors to deceased parties to obtain an order of continuance in an action at law (*Holsman* v. *St. John,* 90 N. Y. 461); but again in the same decade, in 1888, the court extended to an action at law the right of the court to exercise a discretion in respect of granting a continuance of an action where there had been a demonstration of laches. The action was for fraud and conspiracy, commenced in 1877; one defendant died in 1882, another in 1884, and in 1886 plaintiff moved to revive and continue the action (*Lyon* v. *Park,* 111 N. Y. 350).

The motion was denied and Joseph H. Choate argued in the Court of Appeals in support of the order that only if there was no legal discretion could the order be reversed. The opinion of Judge ANDREWS demonstrates that while there were other questions moving the court to decision, for instance, the effect of the successive deaths of the defendants on the question whether there was, as the statute said there must be, a " sole survivor ", the power of the court to deny continuance for laches seems to have been decided (pp. 357, 358). One of the factors considered, which bears rather closely to the case now at bar, was the failure of the plaintiff there, a nonresident, to file security for costs.

In the wake of these decisions, however, the bar found some little difficulty in charting a smooth course in procedural waters, and an expression of this difficulty was announced with a characteristic bluntness and candor by GAYNOR, J., in 1896 sitting at Special Term. Adverting to *Holsman* v. *St. John* (*supra*) and *Lyon* v. *Park* (*supra*), he remarked that " While it is for me to accept with respect these opposing decisions " that it is " Not possible for me to follow them both " from which he felt that it might be " that I am not required to heed either " (p. 49).

The Appellate Division in the Second Department gave a vicarious approval to these sentiments by affirming his order which denied an application to continue an action clearly one in law " upon the opinion of the Special Term ". (*Shipman* v. *Long Island R. R. Co.*, 11 App. Div. 46, 49.) The question was set entirely at rest two years later when the court answered affirmatively the certified question of this court that laches was a sufficient ground to deny a motion to revive a negligence action made by an administrator. (*Pringle* v. *Long Island R. R. Co.*, 157 N. Y. 100 [1898].)

The reasoning underlying these cases seems to us to support the orders of the Special Term. The conditions upon which a continuance of action may be had are closely related to management of the intramural affairs of a court. When a nonresident elects to utilize a judicial facility afforded by New York it is not unreasonable to require that he obey the proper procedural directives of the court before another nonresident, seeking to build on his predecessor's access to the court, asks leave to rearrange the continuance of the litigation. Moreover, there would be a difference, we think, between an absolute denial of a right to continuance and a conditional one where the conditions ought to have a ready compliance.

The Special Term had adequate proof before it that the testimony of Vicherek continues to be material in the action. The court will be required in its judgment to see to it in the exercise of the cy pres powers that the charitable purpose for which the fund was raised will be carried out. Vicherek stood as an officer of the association at a time of crucial change in control and at a time when the association acted initially to effectuate the change with the help of a New York court. The materiality of his testimony gives a firm foundation to the reasonableness of the condition imposed at the Special Term.

Not only was Vicherek subject to examination as an adverse party when the order for his examination was made and modi-

fied, but the very point that he was no longer an officer, and hence not an adverse party, was argued here on the last appeal, but this court nevertheless directed his examination as an adverse party (281 App. Div. 656). This right to examine him notwithstanding his absence from the office but while he remains on the record as a party maintaining the action thus has been adjudicated and is the law of this case.

The function of the deposition of an adverse party examined as a witness is not limited in the modern practice to admissions he may make. Admissions of a party, judicial or extrajudicial, are, of course, admissible; but the function of the deposition turns on the materiality and necessity of the testimony (Civ. Prac. Act, § 288). This is much more broadly based than mere proof of admissions as such. It is indeed a substitute for the physical appearance of the witness on the trial and has exactly the same effect as proof of any fact within his knowledge or observation as his oral testimony would have (Civ. Prac. Act, § 305).

Moreover, there can be no doubt that upon the trial the deposition, once properly taken, could be read, even if Vicherek is out of office, under section 303 which provides broadly for the continuance of the competency of a deposition once taken as to litigation involving succeeding interests in the same subject matter.

The suggestion has been made that if the moving party were in sympathy with the political ideology prevailing in New York and the Czechoslovakia Red Cross had not been dominated by communists, plaintiff's application for continuance might be viewed by the court differently. But a plaintiff coming from a nation entirely friendly to our political philosophy, or even from a sister State where strong ties of history and unity keep us together, would receive the same treatment on an application with the same procedural background. We would not allow strangers to utilize the facilities of our courts without following also reasonable judicial directions. We would, indeed, impose the same terms on our own citizens.

The orders should be affirmed, with $20 costs.

VAN VOORHIS, J. (dissenting). Plaintiff-appellant commenced this action under section 12 of the General Associations Law, which states in part that " An action or special proceeding may be maintained, by the president or treasurer of an unincorporated association to recover any property, or upon any cause of action, for or upon which all the associates may maintain

such an action or special proceeding, by reason of their interest or ownership therein, either jointly or in common." The record before the court upon this appeal establishes, without contradiction, that one Eduard Tuma has succeeded to whatever office Alois Vicherek formerly held in the Czechoslovak Red Cross. This is not a suitable occasion to determine the status of this organization, which is alleged in the complaint to be an unincorporated association with its office and principal place of business in Prague, Czechoslovakia. The memorandum order appealed from appears to accept as true these facts as they are alleged in the complaint for the purpose of this application for substitution, and indicates that the motion would have been granted if Vicherek had submitted to an examination before trial. Vicherek's failure to do so does not, as it seems to me, constitute a basis for denying the substitution. Accepting the facts as they are alleged in the complaint, which must be done for the purposes of this motion, the cause of action, if it be sustained, does not belong to Vicherek but to Czechoslovak Red Cross. The order to take Vicherek's deposition was granted upon notices of motion to take his testimony " as President of the Czechoslovak Red Cross as an adverse party before trial ", and the order of modification by this court upon appeal, directs that his testimony be taken in that capacity. It is well settled that an examination before trial of an adverse party cannot be taken in the person of a former officer, as in *McGowan* v. *Eastman* (271 N. Y. 195, 198), wherein it was said: " But examination of a former employee of a party is not examination of that party through the former employee. It is nothing more than the examination of a witness. This is the rule which has long been applied by the intermediate appellate courts in this State and which we approve. (*Chartered Bank of India* v. *North River Ins. Co.,* 136 App. Div. 646; *Searle* v. *Halstead & Co.,* 139 App. Div. 134; *Western Elevating Assn., Inc.,* v. *Chapman,* 238 App. Div. 14.) In the disposition of this motion, power rather than discretion was involved and we hold that the court was without power." The reason for this rule is not far to seek. The testimony by deposition of an adverse party taken before trial, has the effect of an admission against interest by the party, and is introduced into evidence at the trial like other admissions (*Nixon* v. *Beacon Transp. Corp.,* 239 App. Div. 830; *Galbraith* v. *Galbraith,* 248 App. Div. 914; *Kozuch* v. *Bachmann,* 244 App. Div. 250; *Fletcher* v. *Di Giovanna,* 269 App. Div. 1060; *Cooperative G.L.F. Produce* v. *Glass & Sons Wholesale Grocers,*

180 Misc. 541; *Erdenbrecher* v. *Erdenbrecher*, 188 Misc. 94). That is the reason for the distinction in section 304 of the Civil Practice Act, concerning the conditions under which depositions may be read in evidence. That section provides that a deposition, *except that of a party taken at the instance of an adverse party*, may be read in evidence only if the witness is deceased or is at a greater distance than one hundred miles from the place where the court is sitting, or under some other specified condition. These conditions do not apply to the examination of an adverse party, since his or its admissions against interest are always to be received in evidence (*Gangi* v. *Fradus*, 227 N. Y. 452). An admission is not binding on a corporation or an unincorporated association, however, if made by one who has ceased to be an officer. Such a declaration has no greater effect than if made by any stranger. That is the reason on account of which a former officer can be examined only as a witness. This was again recognized in *McCabe* v. *Interstate Iron & Steel Co.* (262 App. Div. 777) where the court said: " The order and judgment rest solely upon certain admissions made by a former treasurer of appellant at an examination before trial. Since such witness was not an officer or employee of appellant when he was examined, and since this case does not come within recently enacted legislation (Laws of 1941, ch. 921), his examination was not an examination of appellant and was ' nothing more than the examination of a witness ' (*McGowan* v. *Eastman*, 271 N. Y. 195, 198), who then had no power to bind the corporation through admissions."

This cause of action, if it be maintainable at all, belongs not to Vicherek but to an unincorporated association known as Czechoslovak Red Cross (*Kehoe* v. *Leonard*, 176 App. Div. 626; *Rankin* v. *Killion*, 190 Misc. 26, affd. 273 App. Div. 946; *Thomann* v. *Flynn*, 251 App. Div. 325). Section 14 of the General Associations Law provides that a cause of action in favor of an unincorporated association does not abate upon the resignation of the officer through whom it has been brought; on the contrary, this section directs that " If the officer, by or against whom it is brought, dies, is removed, resigns, or becomes otherwise incapacitated, during the pendency thereof, the court must make an order, directing it to be continued by or against his successor in office, or any other officer, by or against whom it might have been originally commenced."

Special Term has no discretion to decide whether a cause of action belonging to an unincorporated association shall abate

under these circumstances; the statute expressly forbids abatement. Cases such as *Coit* v. *Campbell* (82 N. Y. 509), *Forster* v. *Cantoni* (19 App. Div. 306), *Riglander* v. *Star Co.* (98 App. Div. 101, affd. 181 N. Y. 531), *Lyon* v. *Park* (111 N. Y. 350) and *Pringle* v. *Long Island R. R. Co.* (157 N. Y. 100) deal with the exercise of discretion in entirely different respects. Most of them deal with laches, where prejudice has resulted due to delay in applying for substitution. Nothing of that sort is presented in this instance. Here it is no longer possible to examine plaintiff through Vicherek, since he is no longer president of the plaintiff association, and this application for substitution of the new president was promptly made. Without a trial, Special Term could not bar whatever cause of action plaintiff may have, nor relegate plaintiff to the antiquated procedure by bill of revivor. Section 14 states that " the court *must* make an order, directing it to be continued by or against his successor in office ". (Italics supplied.)

The effect of the order appealed from is to prevent plaintiff from having a day in court, inasmuch as leave to renew is meaningless " after the plaintiff has complied with the previous orders of this Court directing an examination before trial." The statement in the majority opinion is erroneous that this condition imposed by Special Term is one with which there should be a ready compliance. Vicherek cannot be examined as an adverse party, for the reasons above stated. The order is equivalent to a direction that Vicherek be re-elected as president, if this action is to proceed.

From what has been said, it does not follow that defendants-respondents cannot examine Vicherek as a witness if they move to examine him as such. Moreover, plaintiff might well be restrained from trying the action until after Vicherek has been produced in this State for examination as a witness, or, if not Vicherek, then someone else familiar with the facts. Those questions are not presented now. The only ruling presently to be made concerns whether the action can proceed in the name of the man who is now president instead of in that of its former officer.

It goes without saying that permitting this substitution should be safeguarded by a clause in the order that it does not constitute in any manner a determination of Vicherek's or of Tuma's right to demand and receive the $115,744.99 which is the subject of the action, nor that this money was subscribed or donated for any purpose to which it would be devoted if plaintiff received it.

Failure of Vicherek to appear for examination might be cause for punishment by contempt, or, if that were impractical, to stay the trial of the action until Vicherek or someone else familiar with the facts were to be produced for examination as a witness, but it has no relation to abatement or revival of plaintiff's alleged cause of action. Denial of an application to substitute may not be employed as a penalty for failure of Vicherek to appear for examination.

The orders appealed from should be reversed and plaintiff's motions for substitution should be granted, with $20 costs and printing disbursements.

Dore, J. P., and Cohn, J., concur with Bergan, J.; Van Voorhis, J., dissents and votes to reverse, in opinion, in which Breitel, J., concurs.

Orders affirmed, with one bill of $20 costs and disbursements to the respondents. [See *post,* p. 1020.]