Nanette Dembitz, J.
Respondent Santiago Montalvo was arrested and arraigned for felonious assault in that he shot his wife, the petitioner, in the left eye and right arm, causing her to suffer gunshot wounds. Petitioner wife and respondent husband, who has no criminal record, had been married for 32 years; the shooting occurred during a visit by both at the home of a married son, in the context of the wife’s refusal to reunite with the husband after a six weeks’ separation.
The proceeding was transferred from a court of criminal jurisdiction to the Family Court because of the latter’s original jurisdiction over all assaults, including felonious assaults, between members of the same family or household. (People v. Johnson, 20 N Y 2d 220 [1967] ; New York Family Ct. Act, § 813, subd. [a].)[1] The question now presented is whether the *701 Family Court should transfer this proceeding back to a court of criminal jurisdiction pursuant to subdivision (a) of section 816 of the New York Family Court Act which provides: “ The family court may transfer any proceeding * * * including one transferred to it by a criminal court, to an appropriate criminal court, if it concludes that the processes of the family court are inappropriate. ’ ’
The transfer decision has grave import for respondent’s liberty of person and for the administration of criminal justice. The maximum sentence within the Family Court’s authority is six months for violation of an order of protection (Family Ct. Act, § 846), while the crimes with which respondent could be charged in a criminal court are punishable by long sentences.[2] And if the Family Court retains jurisdiction, respondent is relieved of the possibility of criminal penalties based on the acts constituting the assault (Family Ct. Act, § 845).
Either the petitioner, the People through the District Attorney, or the respondent-defendant can challenge for an abuse of discretion this court’s determination on transfer.[3] The Family Court must state its reasons for a decision that its retention of the proceeding is “ inappropriate ” (infra, as to this requirement) ; and its method of deciding this question raises due process issues (infra). However, when Family Court jurisdiction is “ inappropriate ” is not specifically defined in the act or elsewhere, nor is the procedure for making the determination on transfer prescribed, nor have these matters yet been fully explored. This opinion will therefore first consider the factors bearing on inappropriateness, then the procedural problems, and then the application of the relevant standards to the instant case.
I. Factors Determinative of [1] ‘ Inappropriateness ” of Family Court Jurisdiction
A. Possibility of Helping the Family.
The Family Court’s “ family offense ” jurisdiction, according to the findings in the act, was established because the real purpose of wives and others who brought assault and disorderly *702 conduct charges against family members generally 11 was not to secure a criminal conviction and punishment, but practical help” (Family Ct. Act, § 811). The Family Court is “to render such help,” primarily through efforts at conciliation; orders for financial support; orders of protection regarding a family or household member’s exclusion from the home, visitation, custody of children, or conduct towards other family members; or medical, psychiatric, or case-work treatment (Family Ct. Act, §§ 821, 817, 842, 843; Family Ct. Rules, rule 8.3). Clearly, the major criterion of the appropriateness of the Family Court’s retention of a proceeding is whether these processes are likely to be helpful to the family from which the charge extrudes as the symptom of turmoil.[4]
Request by Petitioner for Transfer to Criminal Court.
The desire of the wife or other petitioning relative, as to whether the matter should be handled civilly in the Family Court or criminally, must be treated as significant. Not only is satisfaction of the relative’s felt need emphasized in the act’s findings, but, in converting a criminal to a civil cause, the act authorizes the family member, as a private petitioner (as distinguished from the District Attorney or other State agent), to pray “ for an order of protection or the use of the court’s conciliation procedure or, in the alternative * * * that the proceeding be transferred to an appropriate criminal court ” (§§ 821, 822).* [5] And obviously a wife’s prayer for transfer would weigh against the prospect for her conciliation with her respondent husband.
Nevertheless, petitioner’s prayer or desire as to transfer to the criminal court, whether pro or con, can only be treated as one factor in the appropriateness of Family Court jurisdiction. A failure to make the request may be due to the victim’s fear of further attack by the respondent (which is sometimes evidenced by an application to withdraw entirely the Family Court petition), or other motives unrelated to the desirability of transfer. On the other hand, the prayer for transfer may be based on transient vindictiveness; or despite a petitioner wife’s request for transfer, the Family Court’s processes might be helpful to the family in the sense that the husband’s presence in the community under an order of protection and his con *703 tinuance in his employment without a criminal record might be important to his children.
In any event, to rest a determination of such tremendous potential consequence to respondent’s liberty on a petitioner’s personal good or ill will, would raise a substantial question of due process and equal protection. A victim’s personal choice as to whether to make a complaint is, it is true, a substantial factor in the enforcement of the criminal law generally. Nevertheless, once the force of the State is invoked, the choice of what form of State power is exercised and of whether criminal processes apply, must depend on a rational and objective basis. Petitioner’s individual desire can only be weighed as one factor in the transfer decision, else it would rest on an inherently arbitrary and capricious — and therefore unconstitutional — foundation.[6]
B. Possibility of Danger and Societal Interest in Criminal Prosecution.
A proceeding involving “ truly criminal conduct” must be transferred from the Family to a criminal court; such conduct should not ‘1 be treated as a ‘ family offense ’ rather than a crime and go unpunished ” (People v. Johnson, 20 N Y 2d 220, 223, supra). Johnson thus indicates that the Family Court must consider whether respondent has “ the ‘ evil mind ’ which characterizes felonious intent ” (People v. Murch, 263 N. Y. 285, 290) and whether he presents a danger either to his family or to the community unamenable to Family Court processes. While the questions of whether the family can be helped by the Family Court and whether respondent is dangerous frequently dovetail, the lack of danger may be presented as an independent consideration (for example, in the frequent case of a petitioner and a respondent whose relationship in one household, with incidents of mutual assaultiveness, is terminating).
Where respondent’s violence appears to have been stimulated by the family or household situation and either controllable or no longer threatening, the civil processes of the Family Court may be appropriate to spare him from engulfment in criminal procedures and a criminal record with its highly detrimental *704 effect on his employment and other opportunities.[7] The effects on the offender and on the public safety are customarily considered in determining whether criminal or civil processes are the more appropriate in dealing with a violation of law.[8] Like concerns by this court in the transfer of family offense cases are consistent also with the practice of prosecutors of refraining from prosecution in ‘ ‘ many cases of assault * * * within families ”.[9] The Family Court’s “ family offense ” jurisdiction institutionalizes this practice through a constructive middle way, short of either criminally prosecuting or ignoring the violation of law.
While it is true that the primary purpose of family offense jurisdiction is to help the family rather than the individual,[10] a grave question of fairness and due process would again be presented if transfer to a criminal court was determined on the sole basis of this concern — with the result that the respondent’s fate might depend in large part on the unco-operativeness, ill will, or maladjustment of other individuals (see note 6, above). In fairness to the respondent and to the public interest, his dangerousness as an individual must be weighed in determining whether Family or criminal court jurisdiction is appropriate.* [11]
An additional factor for this court’s consideration, suggested by Johnson’s reference to punishment (see above), is the gravity of the assault as such. This court must be mindful of the value of criminal prosecution as a deterrent to violence in the community, and of the retributive function of the criminal law in cases of willful serious injuries.
*705 II. Procedure for Determining "Whether Family Court’s Detention of Jurisdiction is Inappropriate.
The bulk of family offense cases pose no problem with respect to retention of jurisdiction. Barely do petitions pray for transfer, or do judges on their own motion transfer proceedings; generally the situation bears out the assumption of the draftsmen that noncriminal processes are more appropriate in family conflicts.[12] Here, however, the jurisdictional issue is sharply presented in that the District Attorney, with the petitioner wife’s support, urges transfer to a criminal court.
The Family Court Act makes no provision as to the procedure for determining whether retention of jurisdiction is ‘ ‘ inappropriate ”. In Kent v. United States (383 U. S. 541, 554, 562), which involved a juvenile court’s waiver of jurisdiction to a criminal court, the Supreme Court, interpreting the transfer provision in conformity with the Constitutional guarantee of due process, stated: “ There is no place in our system of law for reaching a result of such tremendous consequences without ceremony — without hearing, without effective assistance of counsel, without a statement of reasons. It is inconceivable that a court of justice, dealing with adults, with respect to a similar issue, would proceed in this manner. * * * The hearing must measure up to the essentials of due process and fair treatment ”.[13]
Certainly the question of transfer here, from the Family to a criminal court, has as 1 ‘ tremendous consequences ’ ’ and is as “critically important” for the respondent (383 U. S. at p. 553), as the waiver question in Kent. The constitutional guarantees of due process require procedural protection for the respondent in the instant transfer determination.
Under Kent, the hearing, to satisfy the due process guarantee, need not ‘ ‘ conform with all the requirements of a criminal *706 trial or even of the usual administrative hearing” (383 U. S. at p. 562). The court’s use of the probation file and “ social records” is acceptable, so long as they are subject to respondent’s “ examination, criticism and refutation” (383 U. S. at p. 563, also p. 557); and the Judge seemingly has discretion to conduct the hearing in conference form (see 383 U. S. at pp. 546, 561).[14] A conference interchange of views in the instant type of transfer proceedings, may be advantageous to establish agreement on issues of fact, or at least to narrow them. Furthermore, formal examination and cross-examinaton may serve to make both petitioner and respondent accusatorial and self-defensive, thus' diminishing the prospect of improved family relations[15] (albeit an adversary-type hearing may be the more propitious in some cases for the clarification of the facts).
The conference method would not, as the District Attorney suggested herein, defeat the right of either party to appeal. An appeal would present the question of an abuse of discretion (as in review of bail-fixing or sentencing),[16] rather than evidentiary questions as on review of a conviction. Review herein only requires a record showing the basis for the Family Court’s order, enabling an appellate court to consider whether it is a reasonable determination grounded in a fair procedure.[17]
*707 Legislative Gap as to Inadmissibility of Respondent’s Statements
Whether the transfer proceeding takes the shape of a formal adversary hearing or of a conference, its effective conduct is impeded by an omission in the Family Court Act — seemingly inadvertent — of any provision on the use of statements or testimony in a subsequent criminal proceeding.[18] This legislative gap is diagrammed here in the hope that the Legislature will speedily, in the interest of the administration of justice, amend the act.
Customarily a potential criminal defendant is enabled to present his case in a transfer proceeding without apprehension as to the future incriminating use of his statements. Thus, with respect to transfer of juvenile proceedings from the criminal to the Family Court, section 312-d of the Code of Criminal Procedure provided that “No statement, admission or confession made by the defendant ” in an investigation for transfer purposes shall ever be admissible as evidence. For similar prohibitions in other jurisdictions, see Note, Rights and Rehabilitation in Juvenile Courts (67 Col. L. Rev. 281, 334-335); Harling v. United States (295 F. 2d 161, 162-163). (See, also, Code Crim. Pro., § 913-i, as to nonadmissibility in criminal proceeding of statements during investigations for youthful offender treatment.[19])
The omission of a like protection in family offense cases greatly hampers a respondent’s presentation of facts relevant to transfer and thus prevents a fair determination grounded *708 in full knowledge.[20] Obviously it might be pertinent and to a respondent’s interest to admit the alleged violation of law in order to explain the circumstances and his motivation, or to admit at least his presence at the scene of the alleged crime.[21] (Further, the process of admission and explanation in itself might encourage conciliation and lessen family friction.) In a criminal prosecution the defendant could not be forced to testify or make such admissions because of the privilege against self incrimination. Hcnvever, until the Family Court Act is amended, respondent’s statements during the Family Court transfer proceedings, whether sworn or unsworn, appear to be admissible against him in a criminal prosecution if jurisdiction is relinquished.[22] Accordingly, to enable the Family Court to conduct the transfer proceeding fairly and effectively, without inhibtion in eliciting testimony or statements from respondent, a protection like former section 312-d of the Code of Criminal Procedure should be incorporated in the Family Court Act.
Ill Appropriateness of Transfer of Jurisdiction over ' Respondent.
Proceeding on petitioner’s prayer for transfer, but with the above-described impediment to obtaining information from *709 respondent or a psychiatric evaluation, the court found the following circumstances:
Petitioner and the 53-year-old respondent, married for 32 years, came to New York from Puerto Eico about 15 years ago. Their married son and daughter and young grandchildren also live in this city. Respondent worked as a truck driver for the same employer for 14 years, almost his entire period of residence in New York; the family never received public assistance. During their 32 years of married life, petitioner and respondent had had numerous heated altercations, occasionally with mutual assaultiveness, resulting in part from his drinking, and according to petitioner respondent had sometimes left her for other women; respondent indicated that brief incidents of infidelity had occurred but were customary over such a long marriage. In any event, petitioner remained continuously in the marital home until about six weeks before the shooting. Then, for the first time in their married life she left him — according to her, because of his interest in another woman — and went to live with their married daughter. One source of discord at the time of the separation apparently was respondent’s temporary unemployment.
During the six weeks’ period of separation before the shooting, respondent visited his daughter weekly, in futile efforts to contact his wife. Finally on the Wednesday before the Saturday of the shooting, the daughter and petitioner accompanied respondent for him to buy the latter a pair of shoes, as well as for dinner and a drink at a bar, where he refrained from drinking saying he no longer drank. In his effort at a reconciliation he again spoke to his wife at his daughter’s home on Saturday morning. According to his wife, during their conversation he threatened to kill her if she persisted in remaining away from him. That afternoon he joined her, their daughter and their grandchildren, in a visit at the home of their married son. After a three-hour visit, according to petitioner, as she was preparing to depart, respondent said “ You must die ” and shot her. Respondent, unprotected against the use of his statements in a criminal prosecution, gave no testimony as to Saturday’s events.[23] Petitioner, who is still suffering from the gunshot wounds, voices no interest in a reconciliation but only in the punishment of respondent for her suffering.
*710 To consider first, the criterion of help to the family: — a reconciliation between respondent and his wife seems most improbable now or imminently. As to his supporting her, though they had both worked during part of their married life, she stopped about 10 years ago in order to care for a grandchild ; and respondent had thereafter been her and the grandchild’s primary source of support. With his children and grandchildren respondent has an attentive and affectionate relationship. His visits to his daughter during his separation from his wife were in part to give her money for the' grandchild’s care, and seemingly he would continue such support if at liberty.
The court’s difficulty in estimating whether respondent is dangerous to his wife or the community is intensified by the lack of a psychiatric evaluation. In his favor, he has no criminal record, and petitioner’s testimony and manner at the hearing indicated more a desire for vengeance than a fear of respondent. Considering that the shooting — accepting petitioner’s version — resulted from respondent’s reaction to his unprecedented rejection by her, and considering also that respondent has already been incarcerated for over 10 months (before the transfer to the Family Court), such violent behavior seems unlikely to repeat itself. That respondent made no effort to escape arrest after the shooting is indicative of his traumatic emotional state at the time, and his difference from an habitual criminal. While on parole since the proceeding was transferred to the Family Court, he has, in compliance with the court’s temporary order of protection, refrained from any attempt to contact his wife, and has resumed employment.
On the other hand, however, the extreme gravity of respondent’s alleged attack (considered against the background of less serious attempted assaults on petitioner some years ago) may indicate a deteriorating control over violent impulses, and weighs against retention of Family Court jursidiction.[24]
In sum, the inappropriateness of Family Court jurisdiction is indicated by the following: (1) retention of this proceeding in this court would help the family in some but not in fundamental respects; (2) there is some possibility of respondent’s being dangerous, and a societal interest in criminal prosecution for an extremely grave assault; (3) this respondent could not in any *711 event be spared the detriment of criminal processes (see above, p. 1), since he is subject to trial on a Aveapons charge regardless of Avhether this court retains jurisdiction over the assaultive acts. The indictment being invalid,[25] the proceeding is transferred to the Criminal Court of N>w York City.

 See People v. Brady (54 Misc 2d 638) suggesting an inconsistency between subdivision (a) of section 813, providing for transfer from a criminal court, and section 812, providing for exclusive original jurisdiction in the Family Court. The major apparent purpose of subdivision (a) of section 813 is to provide for rectification when the proceeding is, mistakenly, commenced in a criminal court because the family relationship of the complainant and the accused is unknown or overlooked by the law enforcement officers.

 Respondent was indicted for attempted first degree murder, first degree assault, and unlawful possession of a firearm before the proceeding was transferred to this court. The indictment was found prior to Johnson, during the period when decisions conflicted as to whether this court’s original jurisdiction extended to felonious as well as simple assaults.

 See People v. Davis (27 A D 2d 299, 307)cf. Green v. United States, (308 F. 2d 303, 306). As to whether an appeal by respondent lies only after conviction in the criminal court, see People v. Jolls (17 A D 2d 1031).

 See People v. Davis (27 A D 2d 299, 307).

 Petitions by peace officers and various agencies are also permitted (§ 822) but are infrequent. Wives were accurately envisioned as the majority of petitioners.

 Cf. Seattle Trust Co. v. Roberge (278 U. S. 116, 122): Unconstitutional for State to delegate power of decision to individuals who “ are not bound by any official duty, but are free to withhold consent for selfish reasons or arbitrarily”; Carter v. Carter Coal Co. (298 U. S. 238, 311); People v. Utica Daw’s Drug Co. (16 A D 2d 12, 17 — 18); Matter of Di Maggio v. Brown (19 N Y 2d 283) and authorities therein cited,

 As to the detriment, see The Challenge of Crime in a Free Society (Report by President’s Comm, on Law Enforcement and Administration of Justice, 1967, p. 168).

 With respect to juvenile eases, which afforded the context of this issue prior to the New York innovation respecting family offenses, see for example former section 312-c of Code of Criminal Procedure; United States v. Anonymous (176 F. Supp. 325, 326), disapproving transfer of juvenile court proceedings to a criminal court, on the basis that the former were sufficient for public protection and would prevent an unnecessary branding of the individual as a criminal; Kent v. United States (383 U. S. 541, 556).

 Report cited above in note 7, p. 133.

 As contrasted with the purpose of civil process for juveniles.

 The statutory term “ inappropriateness ” (see People v. Davis, 27 A D 2d 299, 308 as to its breadth), as here interpreted to refer to the likelihood of help to the family, danger to the community, and benefit to the respondent, is not so vague as to import an unconstitutional delegation of legislative power to the judiciary. (See Steelworkers v. United States, 361 U. S. 39, 43.) This type of judicial discretion defies more, precise limitation (see authorities cited above, note 8).

 In 1965-66, only 1% of the family offense proceedings in New York City were transferred to a criminal court. (Twelfth Annual Report of Judicial Conference, 1967, p. 285.)
A typical family offense case is of a working husband who supports his wife and children, but gets intoxicated and becomes assaultive towards his wife on weekends. A usual Family Court order would refer respondent husband to the Court’s Alcoholic Clinic (where a psychiatrist, psychologist, or social caseworker would interview the wife as well and might offer treatment not only to him but to her and marital counseling to both parties), and impose a prohibition on his entering the home while intoxicated, or other restrictions.

 Cf. Specht v. Patterson (386 U. S. 605): hearing required before institution of proceeding in which defendant could be subjected to a lifetime confinement for treatment instead of ten year maximum sentence; People ex rel. Brown v. Johnston (9 N Y 2d 482) and Baxstrom v. Herold (383 U. S. 107) : hearing required before transfer from one character of institution to another.

 Compare People V. Hopkins (205 Misc. 666, 669), transferring a criminal proceeding to Children’s Court “ after months of extensive study and investigation by the court and its staff ”. Former section 312-e of the Code of Criminal Procedure providing for this type of investigation, section 913-g of the Code of Criminal Procedure for similar method for determining whether a defendant should be accorded youthful offender treatment. Cf, also People v. Cascia (191 App. Div. 376, 380) (the accused makes only an unsworn statement on preliminary examination).

 Compare Hawkins v. United States (358 U. S. 74, 77-78) : purpose of rule barring wife or husband’s testimony against spouse in criminal case is to prevent breakup of marriage; cf. also Crocker v. Crocker (54 Misc 2d 738, 740): under new New York divorce law, parties not permitted initially “to solidify their positions in pleadings and thus make reconciliation more difficult ”.

 For review of bail determinations (on habeas corpus), see People ex rel. Shapiro v. Keeper of City Prison (290 N. Y. 393, 399); People ex rel. Pugach v. Noble (12 A D 2d 380, 382); People ex rel. Richards v. Warden (277 App. Div. 87, 89); in Federal procedure, the same question may be reviewed by appeal, see Stack v. Boyle (342 U. S. 1, 6). As to appeal for abuse of sentencing discretion, see People v. Pink (27 A D 2d 893); People v. Drayton (24 A D 2d 751).

 See Kent: “The reviewing court * * • must have before it a statement of the reasons motivating the waiver [from the juvenile to the criminal court] including, of course, a statement of the relevant facts ” (383 U. S. 541, 561).

 The principle of encouraging free communication in preliminary proceedings in family offense cases is embodied in section 824, respecting conferences held by the probation service to adjust eases prior to and in lieu of filing a petition. Statements during such conferences are inadmissible in a fact-finding hearing in the Family Court or in a criminal court prior to conviction. The failure to extend this provision to transfer proceedings seems attributable to the fact that it repeats the Act’s language respecting neglect and other types of Family Court eases, in which the issue of transfer does not arise.

 Cf. also People v. Burd (18 N Y 2d 447, 450): defendant’s admission at preliminary hearing cannot be used against him in criminal trial (nor can refusal to make a statement at preliminary or coroner’s examination: People v. Ferola (215 N. Y. 285, 289); cf. People v. Spitaleri (9 N Y 2d 168, 172) : withdrawn guilty plea cannot be used in evidence; “ Such a distortion of purpose should not be allowed.”

 In the instant ease the District Attorney rejected the court’s proposal of a stipulation that statements in the course of the transfer proceeding, including a psychiatric examination, should be inadmissible in any criminal prosecution. The court was therefore forced to forego a psychiatric examination of respondent, since his statements therein — whether to "a court or privately-retained psychiatrist — might be unprotected by the physician-patient privilege or any other principle of confidentiality, in a criminal proceeding. (People v. Decina, 2 N Y 2d 133, 142-143; Sas v. Maryland, 334 F. 2d 506, 511-512; Taylor v. United States, 222 F. 2d 398, 402.)

 Because of the legislative gap plus the District Attorney’s refusal to stipulate, respondent’s attorney, for his protection in the event of a criminal prosecution, was forced to forego examining him on all such matters; and the court limited cross-examination of respondent to the subjects of his direct examination. As to respondent’s right to that limitation, see Brown v. United States (356 U. S. 148, 155-156); Rogers v. United States (340 U. S. 367, 374); Semler v. United States (332 F. 2d 6, 7, cert. den. 379 U. S. 831); Matter of Newark Morning Ledger Co. (215 N. Y. S. 2d 929, 933); cf. People v. Shapiro (308 N. Y. 453, 458).

 See, as to admissibility of both judicial and extra-judicial admissions, Vicherek v. Papanek (281 App. Div. 498, 504, mot. for lv. to app. den. 281 App. Div. 1020, mot. to withdraw app. granted 305 N. Y. 927); as to admissibility of testimony given in a prior proceeding; Healy v. Rennert (9 N Y 2d 202, 208-209); People v. Corbo (17 A D 2d 351, 35-355); and Edmonds v. United States (273 F. 2d 108, 112 — 113, cert. den. 362 U. S. 977) (admissible even though defendant does not testify in subsequent trial, despite privilege against self incrimination). As to admissibility of unsworn answers to questions and of admissions against interest, see People v. Tisdale (18 A D 2d 274, 275); Jackson v. Dickman (256 App. Div. 925).

 Petitioner’s credibility is somewhat diminished by her initial testimony that she had not spoken to respondent during .their separation until Saturday morning. Her daughter testified, without contradiction, as to the Wednesday meeting.

 See People v. Johnson (20 N Y 2d 220, 225-226); People v. Boyce (55 Misc 2d 53); People v. Hebmann (54 Misc 2d 666). The statement in Davis (27 A D 2d 299, 306) as to the validity of an indictment in a family assault refers to a case commenced by indictment rather than a proceeding commenced [jke the instant one in the Criminal Cpurt,

 If respondent were convicted in a criminal court, a psychiatric evaluation could be made of his dangerousness, and taken into account in sentencing.