John R. Heilman, J.
The respondent herein was charged by information of J ohn Henry Scribner, a police officer in the city of Poughkeepsie, with the crime of assault in the first degree on Wanda King, alleged to have been committed in the bedroom apartment of Bertha Carl, mother of Wanda King, at 217 Union Street in the City of Poughkeepsie, New York, on the 2d day of April, 1969. The information charges that the respondent used a black-handled stiletto-type knife to stab and cut ‘ ‘ the said Wanda Ann King numerous times on the back, left hand and kidney, causing serious physical injury to Wanda Ann King necessitating the removal of Wanda Ann King to Vassar Hospital for emergency treatment and admittance to that hospital in grave condition.”
*465 By direction of the acting City Judge of the City of Poughkeepsie, dated April 9, 1969, this matter was transferred to the Family Court for Dutchess County for determination as to whether or not this court would take jurisdiction.
On April 11,1969, both the respondent and Wanda King were before this court and a hearing was held on said date at which Wanda King testified. The respondent, represented by the Public Defender who also represented him in the Poughkeepsie City Court, declined to testify.
The Constitution of the State of New York and article 8 of the Family Court Act give this court exclusive jurisdiction over any proceeding concerning acts which would constitute disorderly conduct or an assault between spouses. (People v. Johnson, 20 N Y 2d 220.) The charge in the instant case is one of assault in the first degree.
Section 813 of the Family Court Act provides for the transfer from Criminal Court to the Family Court of any complaint concerning acts which fall within the provisions of section 812, and this matter has been transferred from the said City Court to this court pursuant to said section. The Family Court has the authority to determine whether it will take jurisdiction or whether the proceeding should be transferred to a criminal court (Family Ct. Act, § 815), and if so, order the proceeding transferred to the appropriate criminal court (Family Ct. Act, § 816).
At the hearing Wanda King testified that she had been the wife of Ralph King, identified him in court, and stated that they were married on June 10, 1967, that the marital domicile had been at 213 Smith Street in the City of Poughkeepsie, that he still resided at that address but that she resided at 217 Union Street in the City of Poughkeepsie, and that the parties were divorced in February of 1969 in an action in the Supreme Court of the State of New York, County of Dutchess, in which she was the plaintiff and Ralph King the defendant. The court had before it an uncertified copy of the divorce decree and findings of fact and conclusions of law in said action, but required the production of a certified copy thereof, which has since been furnished to the court. The judgment on default and the findings of fact and conclusions of law in said action are dated February 13, 1969, and attached thereto is an affidavit of service sworn to February 20, 1969, alleging service of said judgment and findings by mail on Ralph King at 213 Smith Street, Poughkeepsie, New York. The certificate of the Dutchess County Clerk indicates that the decree and the findings of fact and conclusions of law were filed in Ms office on February 18,1969. Wanda King *466 also testified that Ralph King had showed her a paper which was like the paper which she had received after the divorce and which she believes to be the paper that accomplished the divorce, and that at the time he showed it to her, he said, “we are divorced. ’ ’ The inescapable conclusion is that these parties were divorced at the time of the incident in question and that both parties knew that to be the case at the time of the alleged assault in question.
The Court of Appeals has very recently considered the effect of a divorce in a situation similar to the instant case and the language of the court is very much in point in the instant case. 1 ‘ Divorce does not and cannot, especially where there are children of the marriage, re-establish the parties in their former positions of legal or social independence. However, the surviving relationship is different in quality and extent from that existing during the marriage. By divorce, the parties have procured the dissolution of the special matrimonial or family considerations that would otherwise make the Family Court the appropriate forum for the resolution of disputes. The object of saving the marriage is gone. Moreover, it is no longer relevant that the same acts between members of the same family do not, generally, have the same causes or impacts, as between others, and therefore are not susceptible of the same modes of deterrence. Obviously, in the terminated marriage, the use of violence is no longer the symptom of a failing relationship capable of being salvaged, or made more tolerable by Family Court intervention. The action of the injured victim in filing a criminal complaint is extremely rarely a disguised, or misdirected plea for help in ordering or re-establishing a confused or mismanaged intimate family relationship. It is hardly, therefore, within the purpose of the new legislation that the Family Court have jurisdiction over criminal matters between divorced parties. In any event, such purpose should not be inferred.” (People v. Balassy, 24 N Y 2d 274, 283-284.)
It was further ascertained through the testimony of Wanda King at the hearing that there was a boy born of this marriage, who was recognized by the divorce decree and custody of whom was granted therein to Wanda King with visitation rights to Ralph King at the residence of Wanda King from 10:00 a.m. to 11 a.m. every Sunday, or, at her option, at such other place as was convenient to him. It further appears that there were occasions after the entry of the divorce decree in which the respondent went to the home of Wanda King at night and stayed overnight; that such visitations were not by invitation of Wanda *467 King, but followed a phone call by the respondent in which he asked if he could come down, but Wanda King said she did not reply in the affirmative or negative and he came anyway. It further appears that on one or more occasions of such visitation Ralph King and Wanda King had sexual relations. Wanda King testified that she did not attempt to stop him from coming down or from having these sexual relations because she was afraid of him and knew from past experience that she could not prevent him from coming and that he would beat her if she did not give in to his advances. It appears that on these occasions the front door of the house owned by her mother and in which she lived was not locked because there were boarders in the house, and the door to her room which was on the first floor at the front of the house was also unlocked. It appears, however, that on the occasion of the incident in question she did have a chain-catch on the inside of the door which she alleged respondent managed to work off from the outside. She also testified that she was in great fear of her husband because of the beatings which she had sustained prior to the divorce, some of which are documented in the findings of fact in the divorce action. She testified that she had procured a prior order of protection in Family Court. She further testified to incidents of assault and harassment on the street and in her home after the divorce. The respondent declined to testify at this hearing.
It is the court’s conclusion that there has been no reconciliation in this case following the divorce and that the parties were not members of the same household. They were certainly not living together as one domestic unit. (People v. Dugar, 37 Misc 2d 652; People v. Ostrander, 58 Misc 2d 383, 386.) This question of “ members of the same household ” has recently been considered by the Court of Appeals of the State of New York in People v. Williams (24 N Y 2d 274, 281), in which the court said: “ Thus the ‘ family ’ and ‘ household ’ categories should be read to confer jurisdiction on the Family Court over disputes arising in relationships characterized by a unity of living arrangement, and of social, economic, and, perhaps, legal interdependence.” That court also introduced the phrase ‘ ‘ common living arrangement” in its attempt to define this category.
Because of the judgment of divorce in existence at the time of the incident in question, and because of the complete separation of these parties, both in living status and in personal contact, except for visitation rights of the respondent and the occasions upon which he had forced himself into the presence of the wife, it is the opinion of this court that there is no question of *468 these parties being members of the same household, and this forms one basis for the court’s decision that it cannot take jurisdiction in this case.
However, even this situation might be overlooked if the fundamental purpose of this court’s consideration, namely the retention of the proceeding to help the family, could be established. The Legislature has indicated that this court must determine whether the remedies available to such court would be helpful or useful in preserving the family status. (People v. Davis, 27 A D 2d 299.) The legislative intent has been expressly limited in section 811 of the Family Court Act to certain family assaults and contemplates the help of the court in conciliation procedures, but contains a specific direction that the Family Court may transfer to the appropriate criminal court those matters in which it concludes that its processes are inappropriate. A corollary to this legislative intent is indicated in Matter of Montalvo v. Montalvo (55 Misc 2d 699), where the court said at page 704: u In fairness to the respondent and to the public interest, his dangerousness as an individual must be weighed in determining whether Family or criminal court jurisdiction is appropriate. An additional factor for this court’s consideration * * * is the gravity of the assault as such. This court must be mindful of the value of criminal prosecution as a deterrent to violence in the community and of the retributive function of the criminal law in cases of willful serious injuries.”
The court also pointed out that the respondent could not be spared the detriment of criminal processes since he was subject to trial on weapons charge even if the Family Court retained jurisdiction over the assaultive acts. While there appears to be no separate criminal charge of possession of a dangerous weapon, that element does exist in the instant case and must be taken into consideration by this court.
As a result of the alleged assault in the instant case the victim, Wanda King, was hospitalized from April 2 to April 15, 1969. Had she died, Ralph King would have been subject to a criminal charge of homicide. The Family Court would not have had jurisdiction of such charge — the criminal courts would, have. Indeed it would not be an exercise of good discretion for the Famdy Court to accept jurisdiction of such a case until the complete recovery of the victim is assured. It violates fundamental concepts of criminal law as to responsibility and intent to have liability await the results of medical treatment. Whether or not there is criminal liability with all of its serious consequences, or only a family offense, should not depend on how quickly the victim can be gotten to a place for medical attention or how com *469 petent or successful medical science is in saving the life of the victim.
This court concludes that the disputes between these parties cannot be resolved by mediation of Family Court. The history of assaultiveness on the part of the respondent against Wanda King, and her expressed fear of him, coupled with her testimony that efforts of reconciliation even since the divorce have been fruitless and “we couldn’t reconcilíate in no way”, indicate that the processes of Family Court are inappropriate.
Therefore, because the parties herein involved are divorced and because all of the evidence indicates that the processes of this court are inappropriate and could not accomplish a satisfactory solution by an order of protection or conciliation procedures, the court concludes that the criminal charge against Ralph King referred to this court by the City Court of the City of Poughkeepsie be transferred back to the City Court of the City of Poughkeepsie for further proceedings under the information in accordance with the applicable provisions of the Code of Criminal Procedure and of the Penal Law.