■ In the Matter of LINDA APPELL, Respondent, v. LAWRENCE APPELL, Appellant.— In a proceeding pursuant to article 8 of the Family Court Act, the appeal is from an order of the Family Court, Nassau County, dated January 6, 1971, which transferred the proceeding to the District Court of Nassau County for criminal prosecution. Order affirmed, without costs. Appellant was indicted in the County Court, Nassau County, for assault with a knife upon respondent, his wife. The indictment was dismissed and the matter transferred to the Family Court pursuant to section 813 of the Family Court Act because of the exclusive original jurisdiction of the Family Court over "family offenses." Numerous proceedings were conducted in the Family Court between June, 1970 and January, 1971 and several orders of protection were issued. During these proceedings, it appeared that there was no issue of the marriage and that respondent did not want reconciliation with appellant. Respondent also alleged a further assault by appellant in violation of an order of protection. It further appeared that the underlying offense, the alleged knifing assault, had not even occurred in the marital residence and that respondent had been seriously injured thereby. On this appeal, appellant claims that the consequences of a transfer of the proceedings to a criminal court are so critical as to require procedural due process, i.e., a hearing, before a waiver of jurisdiction can be effectuated by the Family Court pursuant to section 816 of the Family Court Act. Appellant cites, by way of analogy, *Kent* v. *United States* (383 U. S. 541). In our opinion, procedural due process is satisfied where the Family Court states reasons for its waiver of jurisdiction based upon the record before it; and, upon review, the question presented is one of a possible abuse of discretion (*Matter of Montalvo* v. *Montalvo*, 55 Misc 2d 699; *People* v. *Gemmill*, 34 A D 2d 177). In the instant case, the record before us adequately supports the finding of the Family Court that, in view of the serious nature of the assault alleged, the previous court proceedings and the statement of respondent that she had no hope of reconciliation with appellant, its processes were "inappropriate". Munder, Acting P. J., Gulotta, Brennan and Benjamin, JJ., concur; Shapiro, J., dissents and votes to reverse the order and to remand the proceeding to the Family Court for a hearing on all the issues involved, with the following memorandum: I dissent from the finding of the majority that "the record before us adequately supports the finding of the Family Court that, in view of the serious nature of the assault alleged, the previous court proceedings and the statement of respondent that she had no hope of reconciliation with appellant, its processes were 'inappropriate'." In my opinion the record before us is barren of any proof upon which the Family Court could make a determination that its processes were "inappropriate" and that therefore it should relinquish its exclusive original jurisdiction, of respondent's complaint.

to a criminal court. The majority, in its memorandum. notes that "procedural due process is satisfied where the Family Court states reasons for its waiver of jurisdiction *based upon the record before it; and, upon review. the question presented is one of a possible abuse of discretion*" (italics supplied). I agree, but here the Family Court's "waiver of jurisdiction" is not "based upon the record before it", because in truth and in fact there was no record before it. The wife was the only witness before the Family Court Judge and the sum total of her testimony was that immediately after applying for a marriage license she and respondent were married in Brooklyn on February 14, 1968. The rest of the record consists of "lawyer talk" in which her lawyer made accusations all of which were denied by appellant's attorney. Such a transcript cannot be deemed a basis for a waiver of jurisdiction by the Family Court; nor can it afford this court a basis to pass upon the Family Court's "possible abuse of discretion." In *Kent* v. *United States* (383 U. S. 541) the Juvenile Court Judge (in the District of Columbia) made an order reciting that after "full investigation, I do hereby waive" jurisdiction of the petitioner and directed that he be "'held for trial for [the alleged] offenses under the regular procedure of the U. S. District Court for the District of Columbia'" (p. 546). The statute there covering waiver of jurisdiction read: "'If a child sixteen years of age or older is charged with an offense which would amount to a felony in the case of an adult, or any child charged with an offense which if committed by an adult is punishable by death or life imprisonment. the judge may, after full investigation, waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult; or such other court may exercise the powers conferred upon the juvenile court in this subchapter in conducting and disposing of such cases'" (pp. 547–548). Our statute while not *in haec verba* is substantially to the same effect. Subdivision (a) of section 816 of the Family Court Act provides: "The family court may transfer any proceeding originated under this article, including one transferred to it by a criminal court, to an appropriate criminal court, if it concludes that the processes of the family court are inappropriate. After the transfer, the applicable provision of the criminal procedure law and the penal law govern." In construing the District of Columbia statute Mr. Justice Fortas, writing for the majority of the court, said, "It states the circumstances in which jurisdiction may be waived and the child held for trial under adult procedures, but it does not state standards to govern the Juvenile Court's procedure as to waiver" (383 U. S. 541, 547). Under our statute, too (Family Ct. Act, §§ 811, 816), the Family Court is empowered to relinquish its exclusive original jurisdiction to further proceedings in a criminal court where it determines that its processes are "inappropriate" to the fact situation before it, but there is no statutory delineation of the procedure to be adopted in deciding the propriety of retention or relinquishment of jurisdiction (see *Matter of Montalvo* v. *Montalvo,* 55 Misc 2d 699). Under such circumstances and considering the enormous impact of a criminal prosecution, as distinguished from a civil proceeding in the Family Court, due process necessitates the reading into our statute of a requirement for a fair hearing before the court may exercise its discretion to relinquish its original jurisdiction (cf. *Specht* v. *Patterson,* 386 U. S. 605; *People* v. *Bailey,* 21 N Y 2d 588). Though, of necessity, the Family Court should be given wide latitude in determining whether to retain jurisdiction, and should not be held to any purely formalistic approach, yet, as Mr. Justice Fortas put it in *Kent* (383 U. S. 541, *supra*) in discussing the District of Columbia juvenile statute, "this latitude is not complete", for "At the outset, it assumes procedural regularity sufficient in the

particular circumstances to satisfy the basic requirements of due process and fairness, as well as compliance with the statutory requirement of a 'full investigation'" (p. 553). In this case "the record" consists of appearances by the parties on five different occasions (June 25, 1970, July 21, 1970, September 16, 1970, November 23, 1970 and January 6, 1971). On the first occasion (June 25, 1970) there was discussion between court and counsel in which petitioner's lawyer contended that the parties were "not legally married" and that "she [petitioner] wishes this man to be transferred to the criminal courts for prosecution." The illegality of the marriage was denied by appellant's counsel, who said that appellant "also has at all times indicated that he wishes still to go back with Mrs. Appell." There was further discussion back and forth but no testimony of any kind was taken. Appellant's lawyer thereupon said, "I think we should have a hearing, your Honor," and, after some further discussion, the court said, "Adjourn to July 21, 1970, for preliminary hearing. * * * For preliminary hearing on the issue of marriage and relationship between the parties, and whether the Family Court should retain jurisdiction." A temporary order of protection was then issued with the consent of appellant. On the adjourned date, July 21, 1970, the parties again appeared before the court. After petitioner testified to her marriage to appellant, her lawyer attempted to establish that the marriage was bigamous on the part of appellant, but he was unable to do so because the investigation officer who "was supposed to have the documents here" was on vacation. Thereupon a conference was held in chambers, after which the court said: " I have had a conference in chambers with counsel and it was decided at this point that since the attorney for the petitioner wanted to look into certain aspects of the marriage and so forth, that it would be best if this matter were put over". On September 16, 1970 the parties again appeared before the court. Again no testimony was taken, but in the course of colloquy between court and counsel the Judge stated to petitioner's counsel that one of the material elements of the case was the alleged invalidity of the marriage and he asked petitioner's counsel, "Are you going to be able to prove that?" There was then some further colloquy and, after a conference in chambers and an admission by petitioner's counsel that since the original order of protection "they have gone back together again", by reason of which the order "became vitiated", and after appellant's counsel said he had "no objection" to the issuance of a new order of protection, such new order was issued by the court. The case was then adjourned to November 23. On that date petitioner's lawyer did not appear as a result of which the case was set over to January 6, 1971. On the latter date, although the case had been adjourned for the taking of testimony, no such happening eventuated. Instead there was more colloquy in which petitioner's attorney discussed the basis of the assault indictment and in which appellant's attorney stated without contradiction that "the couple has since the time of the indictment, that is, met together, slept together, gone out together", to which the court responded, after some further colloquy and an offer of proof by appellant: " All right, I'm going to make this decision: It appearing to be no useful purpose to be served in this case being held in the Family Court in view of the serious nature of the offense, the injuries, and there appearing to be no likelihood of reconciliation, no children and the Petitioner's firm statement that she could not feel that this Court can render any services and in mind with the spirit of the Family Court Act, I order this case transferred back to the Criminal Court for prosecution." It is apparent from the determination of the court that the basic contention of petitioner that there was no valid marriage between her and appellant was not considered by the learned Family Court Judge. Instead, he based his decision upon the "serious nature of the offense" and the "injuries" (of which there was no *proof* whatever before him

and which in any event were not a proper criteria [cf. *People* v. *Johnson*, 20 N Y 2d 220]) and his conclusion that there was "no likelihood of reconciliation". However, his conclusion was arrived at without any examination into the relationship of the parties and it flew directly in the face of the conceded fact that *after the indictment and after he himself had made an order of protection the parties cohabited together*. Thus, this finding of "no likelihood of reconciliation" is wholly without foundation in the record. His further conclusion that he has also taken into consideration "the Petitioner's firm statement that she could not feel that this Court can render any services" as a basis for his determination rests upon the same infirmity. In any event, whether the Family Court should or should not retain jurisdiction may not be predicated solely upon the alleged feeling of a complaining spouse (*Montalvo* v. *Montalvo*, 55 Misc 2d 699, 702, *supra*) and most certainly not when that alleged "firm statement" has not been subjected to question by the Family Court. It is clear to me that these specious considerations made the Family Court Judge believe that as a *matter of law* he had to relinquish jurisdiction, for he said that under the circumstances portrayed by him, "I don't think I have much choice in the matter." It seems to me that the "record" made in this case is woefully deficient and that in its present state it could not act as a basis for the exercise of the Family Court's discretion in deciding whether to retain or transfer jurisdiction; and certainly there was no basis for any holding *as a matter of law* that jurisdiction could not be retained. I therefore vote to reverse and remand for a hearing on all of the issues involved.