Breitel, J.
These are separate cases raising questions of the original jurisdiction of the Family Court under the new constitutional provision and implementing statute, effective September 1, 1962 (N. Y. Const., art. VI, § 13; Family Ct. Act, § 812). Under these provisions the Family Court is given ‘ ‘ exclusive original jurisdiction * * * over any proceeding concerning acts which would constitute disorderly conduct or an assault between spouses or between parent and child or between members of the same family or household ” (id.).
The purpose of these enactments was to remove in the first instance from the criminal courts a limited class of offenses arising in the family milieu, in order to permit a more ameliorative and mediative role by the Family Court. It was recognized that many family confrontations, although technically taking the character of a criminal offense, are lacking in the elements, public or private, that justify the use of criminal procedures and sanctions. In order, therefore, to provide an opportunity to reach and treat the roots of family discord, without separate and inconsistent procedures in different courts, the design was to bring such matters, in the first instance, to the Family Court. If criminal complaints are filed in the criminal courts, they must be transferred to Family Court for disposition (Family Ct. Act, § 813). The Family Court need not, however, retain this first instance jurisdiction. In a proper case, if it finds the matter inappropriate for its methods and facilities, the Family'Court may transfer the matter to the applicable criminal court of jurisdiction (§ 816).
A critical element in the jurisdictional provisions is that the criminal offense charged be either disorderly conduct or an assault, without regard to the degree or rank of the latter offense. Another critical element is that the offending conduct arise between spouses, between parent and child, or between members of the same family or household. As will be seen, the denotations of these classes are not precisely determined by the language used.

The Williams Case

Williams was convicted of assault in the third degree, a misdemeanor, in the Criminal Court of the City of New York on June 8, 1967, and sentenced to a term of six months in the city *279 penitentiary. The prison term has been completed. The Appellate Term unanimously affirmed.
Williams ’ sole contention on appeal is that the proceeding should have been transferred to the Family Court, on the ground that the complainant, the victim of the assault, Frederick Lewis, was Williams’ uncle, and that the dispute arose out of the uncle’s attempts to evict Williams from a house owned by the uncle and occupied by 30-year-old Williams, his mother and his grandparents. His uncle does not reside in the house. At the arraignment, the unde testified that the grandparents were afraid of their grandson and had asked for the uncle’s assistance. He further asserted that the nephew needed “medical care ”, paid no rent, and had verbally abused him. On a commitment for mental observation, Williams was found legally sane.
At the trial, the uncle testified that Williams had refused to leave the house and had drawn a knife, 1 ‘ made a reach ’ ’ for his uncle, and followed him downstairs when the uncle withdrew. The uncle called the police, and Williams put the knife away before the police arrived. When the police arrived and asked the uncle what he wanted done, the uncle replied that he “ wanted him [Williams] arrested, that it was the only way to settle the thing without somebody dying over it.”
Williams denied that he had threatened his uncle with a knife. He testified that he refused to have anything to do with his uncle and paid rent to his grandparents, adding that there was a misunderstanding in the family as to whom the rent was due.
Williams contends that this was a family argument, and that the assault charge on which he was convicted should have been transferred to the Family Court.
This case, and the Balassy matter (infra) appear to be the first cases in this court involving a construction of the ‘ ‘ family ” jurisdiction of the Family 'Court. (The question has arisen elsewhere and there is disagreement in the lower courts as to whether a couple living together as husband and wife, although unmarried, qualify as members of the same family or household [compare, e.g., Matter of Best v. Macklin, 46 Misc 2d 622, with People v. James, 55 Misc 2d 953, and People v. Johnson, 48 Misc 2d 536].)
*280 The background for the Family Court’s newly acquired ‘ ‘ family jurisdiction ’ ’ was the recognition that many criminal prosecutions were pressed by complainants who were not necessarily concerned with the public aspect of the crimes perpetrated, but instead were using the charges as a means, often inadequate, to improve or otherwise alter their family relationships. Thus it was found that cases of criminal charges brought by wives fell into three discernible patterns:
(1) Wives who lodge complaints to compel their husbands to leave home and to obtain protection, support, and custody of the children;
(2) Wives, normally married less than five years, who treat the assault or disorderly conduct as a sign of troubled marriage and who use the courts to seek resolution of the difficulty and effect conciliation; and
(3) Wives, usually married more than five years, and willing to settle for a less than an ideal marriage, who seek to use the proceeding only to get their husbands to stop beating them or to stop drinking heavily. (See Report No. II of Joint Legislative Committee on Court Reorganization [Jan; 30, 1962], pp. 18-19 ; Family Ct. Act, § 811.)
Although section 812 of the Family -Court Act includes within Family Court jurisdiction assaults ‘6 between members of the same family or household ” as well as between “ spouses ” and between “ parent and child” the legislative history is minimal. The Joint Legislative Committee’s Comment on section 812 merely indicates that the section ‘ ‘ relies on the common law method of case by case adjudication to define 1 family ’ [and] ‘ household ’ * * * for purposes of the civil proceeding provided in this article ” (Report No. II, supra, p. 136). Earlier studies recommending family court or civil treatment of 1 ( family offenses ”, as well as the scant presentations taken on hearings on the proposed Family Court Act, discussed disputes between spouses to the exclusion of other relationships (see, e.g., statement of Judge Peter Horn, of the Magistrates’ Court of Brooklyn, at the Public Hearing of the Joint Legislative 'Committee on Court Reorganization [New York, Feb. 16, 1962], pp. 115, 117; N. Y. Legis. Doc., 1956, No. 18, Report of the Temporary Commission on the Courts to the Governor and Legislature [Feb. 15, 1956], pp. 51, 61-62; Gellhorn, Chil *281 dren and Families in The Courts of New York City [1954], p. 235. But see Report of the Community Service Society of New York, “A New Pattern for Family Justice ” [March, 1954], pp. 59-61.)
This spare legislative history emphasizes the problem of inter-spousal conflict rather than indicates the kinds of relationships which qualify as intra-family or intra-household. This emphasis on the problems of husband and wife, however, suggests that the additional jurisdiction was included to cover similar situations of strife within the family unit. Thus the “ family ” and “ household ” categories should be read to confer jurisdiction on the Family Court over disputes arising in relationships characterized by a unity of living arrangement, and of social, economic, and, perhaps, legal interdependence. The “family” and “household” jurisdictions appear to be largely coterminous, and appear intended to cover parties whose disputes may be resolved best by the mediation of the Family Court, rather than by criminal procedures and sanctions.
Critical in this case is that the uncle is not a member of the same household or living arrangement as his nephew, and that the assault can be characterized as growing, to a greater degree, out of the tenancy in the house, rather than out of the intimate family relationship. To be sure, the elements of the cross-family relationship cannot be ignored; but practical lines must be drawn. Absent a common living arrangement between the uncle and nephew and the cause of the conflict being the incidents of the landlord-tenant relationship rising from the uncle’s ownership of the house, the incident does not, on balance, arise out of the family or household context.* Thus the criminal conviction should be affirmed.

The Balassy Case

The Balassy matter involves an assault by a divorced husband upon his former wife. Balassy was convicted in Supreme Court, after a jury trial, of assault in the third degree, a misdemeanor, and sentenced to an indeterminate sentence. The Appellate Division unanimously affirmed.'
*282 At the trial, Balassy’s former wife, Elsie Pituskin, testified that on May 10, 1966 she had served her former husband with a summons charging him with disorderly conduct in that he had broken her fire escape window. Two hours later Balassy approached her on the street and asked her to accompany him somewhere so he could speak to her. When she refused to go to his car, he began to punch her, and when she fell to the ground, he kicked her. Police officers took her to a hospital where she was treated.
Balassy, although assisted by counsel, acted as his own attorney. He testified that he had not touched his wife; that, when he tried to speak to her about their children, she spontaneously began to scream and swing her arms and kick her feet; and that she fell to the ground and continued to thrash about as though suffering an epileptic fit or heart attack. He said that when he first saw her she appeared as though she had recently been beaten by someone, and that any additional injury was self-inflicted as she rolled on the ground.
Balassy contends that the evidence is insufficient to sustain a finding of iguilt beyond a reasonable doubt since the evidence of an assault was supplied solely by Elsie Pituskin, who at the trial admitted that she had been a patient in mental hospitals in California and New Jersey for a total of four weeks in 1960.
Elsie Pituskin’s testimony, however, was not incredible on its face, and constituted evidence upon which the jury could find guilt beyond a reasonable doubt.
Balassy also contends that it was error for the court to sentence him to an indefinite sentence under former section 203 of article 7-A of the Correction Law, in that the court informally found that Balassy was incapable of reform. This argument is based on the court’s characterization of Balassy: “ I don’t think you have any use for any court. You set yourself above courts, above government, above the law, above everything.” The court also read from a psychiatric report that described Balassy as “ irresponsible, unstable, a chronic liar and capable of impulsive aggressive behavior.” The court however stated:
“ Mr. Balassy, I think that a correctional institution would do you a lot of good.” The contention that there was a finding of incorrigibility is, therefore, without merit. (See People v. Wilson, 17 N Y 2d 40, 45; compare the sentencing Judge’s *283 remarks with those in People ex rel. Kern v. Silberglitt, 4 N Y 2d 59, 63.)
Balassy’s major contention is that the case, involving an assault between divorced spouses, was improperly treated as a criminal matter without initial referral to the Family Court. Balassy testified that, since their divorce, he and his former wife had passed through a series of reconciliations lasting several weeks, followed by arguments after which Balassy would move out of his wife’s apartment. Elsie Pituskin testified that Balassy had slept in her house for about five weeks starting in January of 1964, but that she moved out after the first two weeks, and that she and Balassy and their two children had spent Easter Sunday together shortly before the day of the assault.
There is no assertion, however, that Balassy and Elsie Pituskin were living together at the time of the assault, nor that despite their divorce they had settled upon a stable, albeit extralegal, relationship.
Balassy relies on Matter of Koeppel v. Judges, Family Ct. (44 Misc 2d 799). There a petition by an ex-husband to prohibit the Family Court from hearing a case involving him and his ex-wife was dismissed. Prohibition was held an inappropriate remedy in light of the opportunity for direct appellate review. Alternatively, it was held that article 8 of the Family Court Act covered divorced parties, because of the continuing legal and social consequences of their former relationship, and because they were the “ parents ” of their mutual children. Hence, it was said, that they were members of the same family (id., pp. 801-802).
Divorce does not and cannot, especially where there are children of the marriage, re-establish the parties in their former positions of legal or social independence. However, the surviving relationship is different in quality and extent from that existing during the marriage. By divorce, the parties have procured the dissolution of the special matrimonial or family considerations that would otherwise make the Family Court the appropriate forum for the resolution of disputes. The object of saving the marriage is gone. Moreover, it is no longer relevant that the same acts between members of the same family do not, generally, have the same causes or impacts, as between *284 others, and therefore are not susceptible of the same modes of deterrence. Obviously, in the terminated marriage, the use of violence is no longer the symptom of a failing* relationship capable of being salvaged, or made more tolerable by Family Court intervention. The action of the injured victim in filing a criminal complaint is extremely rarely a disguised, or misdirected plea for help in ordering or re-establishing a confused or mismanaged intimate family relationship. It is hardly, therefore, within the purpose of the new legislation that the Family Court have jurisdiction over criminal matters between divorced parties. In any event, such purpose should not be inferred. Hence, Matter of Koeppel v. Judges, Family Ct. (supra) is not persuasive.
A final assertion by Balassy dealing with proof of divorce has merit, however, and requires a modification of the order below. Balassy argues that aside from Elsie Pituskin’s testimony no evidence of the divorce was presented. Elsie Pituskin testified that she had obtained in 1960 an interlocutory decree of divorce in California, where she and her husband then resided, and that it became final in 1961. Balassy admitted being served with a notice of pending divorce proceedings, but said that although he believed himself to be divorced, he was only relying on what his wife had told him.
There is no dispute that the Supreme Court would have lacked initial jurisdiction had there been no divorce. Considering the importance of this fact, a proper safeguard to Family Court jurisdiction requires more than the uncorroborated testimony of the victim that a divorce had been obtained. Where, as here, the divorce was obtained by the complainant, and the burden, of establishing* the decree is relatively light, the production of the decree by the People should be required. This will eliminate the risk that the court will erroneously rely on the not infrequent misconceptions that a married couple may entertain concerning the legal status of their relationship.
The case should be remitted for the taking* of additional evidence to show that the former marriage, admitted by all parties, was indeed terminated by a valid California decree of divorce. The order, therefore, should be modified to remit the matter to the trial court for a further proceeding* to determine the status of the defendant, and, so modified, be affirmed.
*285 The Fowlkes matter involves the categories of offenses between spouses over which the Family Court has exclusive original jurisdiction. Fowlkes was convicted on his plea of guilty to attempted assault in the second degree, a felony, and sentenced for 2 to 3½ years in State prison. The Appellate Division affirmed without opinion, one Justice concurring in a separate memorandum (30 A D 2d 658).
Fowlkes was accused of having broken into the apartment of a woman, now conceded to be his wife, and of stabbing her. He was indicted on two counts of assault, and counts of burglary and possession of a dangerous weapon.
The People concede that since the victim was Fowlkes’ wife, there was no jurisdiction in the Supreme Court over the assault counts by virtue of the exclusive original jurisdiction of the Family Court over assaults (Family Ct. Act, §§ 812, 813). They argue, however, that the trial court retained jurisdiction over the burglary and weapon offenses, and that the plea should be treated as a hypothetical one given in satisfaction of counts properly before the court.
Fowlkes, citing People v. James (55 Misc 2d 953, 960), contends that the weapon charge should also have been transferred to Family Court, and that the burglary charge, which did not appear in the preliminary criminal court complaint, was added in the indictment to circumvent Family Court jurisdiction and ought to be dismissed. He concludes that the facts underlying the indictment require that the entire matter be treated as one of assault, subject to exclusive Family Court jurisdiction.
Both the burglary (old Penal Law, § 402; breaking and entering “ with intent to commit some crime therein ”) and the possession charges (old Penal Law, § 1897, subd. 9; possession of a dangerous knife “with intent to use the same unlawfully against another”) depend upon the intent to assault as component parts of the crimes. Although the ingredient unlawful intent is necessary to each, they are, nevertheless, distinct crimes, involving additional conduct legally separable from the assault committed.
The trial court in the James case (supra) relied upon People v. Sigismondi (21 N Y 2d 186) in holding that a crime based in part on an intent to assault could be tried only in the Family *286 Court. In the Sigismondi case, the court held that uncorroborated testimony of a completed rape could not provide the basis for a conviction on a charge of feloniously possessing a dangerous weapon, a knife, with intent to use it unlawfully against another. There it was recognized that testimony deemed so unreliable as to require its corroboration remained unreliable even when used to prove a component of a different crime arising out of the same transaction.
Here the problem is not one based on a legislative finding that certain evidence is unreliable and must therefore be corroborated. It is, rather, that certain acts, namely assault and disorderly conduct, if committed by a spouse against a spouse, are, at least until the Family Court surrenders jurisdiction, not criminally prosecutable. If these acts, when combined with additional conduct, establish a different crime, that crime is not necessarily also within the exclusive jurisdiction of the Family Court.
In this case, however, the crimes charged, burglary and felonious possession of a dangerous weapon, rely on the assault, or the intent to commit it, as the only element of criminal conduct charged in the indictment. The burglary charge, without the intent to assault, fails and leaves only the criminally ambiguous fact that a husband broke into his wife’s apartment. For similar and even stronger reasons, without the assault the possession of the knife may not be criminal at all . Moreover, in People v. Johnson (20 N Y 2d 220) the court held that the County Court could not try an indictment accusing a defendant of assaulting his wife without initial referral to the Family Court. There the assault was, indeed, with a knife. It would be inconsistent now to hold that an indictment, based on the same facts as in the Johnson case, could now be prosecuted in the criminal court, because such facts were charged not only as an “assault” but were also used as a basis for a different charge of crime, namely, possession of a dangerous weapon with the requisite intent to use unlawfully.
In both instances here the assault charges have been converted to “ non-assault ” charges, although the non-assault charges still depend on an intent which is found only in the assault. The purposes of the Family Court Act should not be subject to the likely circumvention such a practice would allow. *287 Consequently, when assault and non-assault charges are inextricably related by a common element in the offenses, and not otherwise, the transaction lies in the first instance within the jurisdiction of the Family Court.
Even if the Supreme Court’s jurisdiction over the burglary and possession charges were sustained, a serious problem would be raised by the acceptance of the plea based on an assault count of the indictment. This court has held that a plea “ sought by the defendant and freely taken as part of a bargain which was struck for the defendant’s benefit ” will be sustained even if “there may be question whether [it is] technically and logically consistent” (People v. Foster, 19 N Y 2d 150, 154). Different considerations arise, however, where, as here, the plea is to a crime improperly a part of the indictment because the court lacks jurisdiction over the offense. The danger is too great that counts properly before the court might serve merely to afford jurisdiction so that in practical effect, if not in theory, the court proceeds to adjudicate the assault charge otherwise outside its jurisdiction.
The judgment, therefore, should be reversed, the conviction vacated, and the proceeding transferred to the Family 'Court.
In summary, then, the jurisdiction of the Family Court is held not to embrace the nonhousehold uncle-nephew relationship present in the Williams case, or the living-apart divorced spouses in the Balassy case. The Balassy matter should, however, be remitted for production of the decree of divorce. Finally, in the Fowlkes case, the Supreme Court should be denied initial jurisdiction and, therefore, the power to entertain the plea of guilty to the assault charge, and the entire proceeding should be transferred to the Family Court. That court, of course, may choose to retransfer the matter to the Supreme Court.
Accordingly, the judgment in People v. Williams should be affirmed, that in People v. Balassy should be modified and remitted for further proceedings to determine the divorce status of the parties, and the judgment in People v. Fowlkes should be reversed, and the proceeding transferred to the Family Court.
■Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Keating and Jasen concur.
*288 In People v. Williams: Judgment affirmed.
In People v. Balassy. Judgment modified and ease remitted to Supreme Court, Bronx County, for further proceedings in accordance with the opinion herein.
In People v. Fowlkes: Judgment reversed and case remitted to Supreme Court, Bronx County, for further proceedings in accordance with the opinion herein.

 Cf. People v. Harkins (49 Misc 2d 673) assault between brothers-in-law; People v. Keller (37 Misc 2d 122) assault on mother-in-law. In both eases, significantly, defendant’s wife had also been assaulted.