415 F.2d 205
 UNITED STATES of America ex rel. Robert A. HERRINGTON, Petitioner-Appellant,
v.
Vincent R. MANCUSI, Warden, Attica State Prison, Respondent-Appellee.
UNITED STATES of America ex rel. Michael J. MARSHALL, Petitioner-Appellant,
v.
Vincent R. MANCUSI, Warden, Attica State Prison, Respondent-Appellee.
 No. 657.
 No. 658.
 Docket 33088.
 Docket 33494.
 United States Court of Appeals Second Circuit.
 Argued May 23, 1969.
 Decided August 25, 1969.
 
 COPYRIGHT MATERIAL OMITTED Jeffrey E. Glen, New York City, for petitioners-appellants.
 Robert S. Hammer, New York City (Louis J. Lefkowitz, Atty. Gen., of the State of New York and Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for respondent-appellee.
 Before LUMBARD, Chief Judge, FEINBERG, Circuit Judge, and TIMBERS, District Judge.*
 LUMBARD, Chief Judge:
 
 
 1
 Petitioners Robert Herrington and Michael Marshall, appealing from orders dismissing their habeas corpus petitions, claim that their criminal convictions in the New York Supreme Court for Monroe County were obtained in violation of due process, on the ground that under New York law, Family Court Act § 812, exclusive original jurisdiction over the intra-family "assaults" with which they were charged rested in the Family Court, and not in the Supreme Court.
 
 
 2
 We hold that petitioners have failed to establish that under New York law the Supreme Court lacked jurisdiction over their cases. Therefore we do not reach their novel due process argument: that federal habeas corpus relief is available to a defendant convicted in a state court which lacked jurisdiction of the subject matter solely because of the provisions of state law.
 
 
 3
 Petitioner Herrington was tried in New York Supreme Court, Monroe County, under an indictment charging him with the first degree murder of his mother-in-law, and with attempted first degree murder of his wife. Both incidents occurred on December 11, 1962, the evidence at trial indicating that petitioner had killed his mother-in-law and wounded his wife with a shotgun. The jury returned its verdict on July 3, 1963, finding Herrington guilty of first degree manslaughter and second degree assault. Sentences of 15 to 30 years and 7½ to 15 years, to run concurrently, were imposed July 25, 1963. The Appellate Division affirmed the conviction without opinion, People v. Herrington, 23 A.D.2d 524, 255 N.Y.S.2d 824 (4th Dept.1965).
 
 
 4
 Subsequently, in a coram nobis proceeding, petitioner raised for the first time the jurisdictional issue he relies on in his present petition. Relief was denied by Judge Rosenthal on June 2, 1967. The Appellate Division affirmed without opinion, leave to appeal was denied, and finally the Supreme Court denied certiorari. 390 U.S. 1045, 88 S.Ct. 1646, 20 L.Ed.2d 307 (1968). Herrington's application for a writ of habeas corpus was denied by Judge Burke, in the Western District of New York, on August 7, 1968.
 
 
 5
 Petitioner Marshall was convicted on March 30, 1967, in New York Supreme Court, Monroe County, of the crimes of sodomy and incest committed against his daughter. He is serving concurrent terms of 10 to 20 years, and 5 to 10 years for these crimes. Marshall's habeas corpus petition, raising a jurisdictional claim similar to that presented by Herrington's petition, was dismissed by Judge Curtin in the Western District of New York on June 4, 1968, for the reason that petitioner then had pending in the state courts an appeal from his conviction. The conviction subsequently was affirmed unanimously, without opinion, by the Appellate Divison, People v. Herring, 30 A.D.2d 1050, 295 N.Y.S.2d 426 (4th Dept.1968), and the Court of Appeals denied leave to appeal.
 
 
 6
 We affirm the denial of the petitions of Herrington and Marshall, as we conclude that petitioners have not established that under the New York law their cases were not properly tried in the Supreme Court.
 
 I. THE FAMILY COURT ACT
 
 7
 Both petitioners claim that the Supreme Court of New York had no subject matter jurisdiction over the acts alleged in the indictments returned against them, and that exclusive original jurisdiction lay rather in the Family Court. They seek federal habeas corpus relief to void their convictions on the ground that this lack of jurisdiction under provisions of state law violated due process.
 
 
 8
 In 1962 the State of New York amended its Constitution to create a Family Court, which was to have jurisdiction "as may be provided by law," over "crimes and offenses by or against minors or between spouses or between parent and child or between members of the same family or household." N.Y. Const. art. VI, § 13(b). Legislation implementing this constitutional amendment was passed by the Legislature in 1963 in the form of the Family Court Act. N.Y.Jud. — Court Acts, Pt. 1, Family Court Act § 1 et seq. (McKinney 1963).
 
 
 9
 The key provision of the Act for present purposes is § 812:
 
 
 10
 "The family court has exclusive original jurisdiction over any proceeding concerning acts which would constitute disorderly conduct or an assault between spouses or between parent and child or between members of the same family or household."
 
 
 11
 If a criminal complaint charging any of the acts within the compass of § 812 is lodged in any court other than the Family Court, that court must transfer the complaint to the Family Court under § 813. However, the Family Court in turn may transfer any proceeding within its jurisdiction under § 812 to an appropriate criminal court if it finds "that the processes of the family court are inappropriate." Family Court Act § 814(a). After such a transfer by the Family Court the usual New York substantive and procedural law applicable to criminal prosecutions governs the disposition of the case, just as if the Family Court had never entered the picture.
 
 
 12
 The purpose of the above provisions is stated in § 811 of the Act. The Legislature determined that many criminal complaints founded upon intra-family assaults or disorderly conduct were brought by complainants to secure "practical help" in adjusting marital difficulties, rather than to secure a criminal conviction. The Act eliminates the need for such an indirect approach by vesting in the Family Court, with its power to enter orders for support and protection and its facility for initiating conciliation proceedings, an exclusive original civil jurisdiction over certain intra-family offenses. But, recognizing that the Family Court's ameliorative processes may be futile or inappropriate in some cases, the court may transfer matters to a criminal court for prosecution. See Montalvo v. Montalvo, 55 Misc. 2d 699, 286 N.Y.S.2d 605, 609-611 (Fam. Ct.1968). Thus the legislative scheme contemplates criminal prosecution of family offenses constituting assault or disorderly conduct only if a Family Court judge first determines that the dispute cannot be resolved through the less severe remedies at the Family Court's disposal. See generally Joint Legislative Comm. on Court Reorganization, Rep. No. II, Jan. 30, 1962, pp. 18-19. It is apparent that a defendant has a vital interest in the question of whether the Family Court or a criminal court acquires jurisdiction over the complaint filed against him. The maximum sentence that the Family Court may impose is six months, in the event of the violation of an order of protection, while a criminal prosecution can lead to extended sentences, such as those imposed upon both petitioners here.
 
 II. ROLE OF THE FEDERAL COURTS
 
 13
 The due process claim which petitioners seek to raise is a novel one. It has long been settled that habeas corpus relief is available to a defendant convicted by a court without jurisdiction. E.g., Ex parte Watkins, 28 U.S. (3 Pet.) 193, 7 L.Ed. 650 (1830); In re Coy, 127 U.S. 731, 758, 8 S.Ct. 1263, 1272, 32 L.Ed. 274 (1887) ("when the question of jurisdiction is raised [on habeas corpus], the point to be decided is, whether the court has jurisdiction of that class of offenses"); Bowen v. Johnston, 306 U.S. 19, 23-24, 59 S.Ct. 442, 83 L.Ed. 455 (1939). But no federal court to our knowledge has ever granted a writ where a state court's asserted lack of jurisdiction resulted solely from the provisions of state law, which is the situation alleged in both petitions before us. Concededly, the New York courts have jurisdiction to prosecute murder, attempted murder, sodomy and incest, the only matter in dispute being which state court had jurisdiction in these instances. Thus we are asked to hold that the New York Supreme Court deprived petitioners of due process of law in exercising criminal jurisdiction over them in violation of § 812 of the Family Court Act. Of course, even were we to hold that the Supreme Court had no jurisdiction under state law, petitioners would not be entitled to relief under the due process clause unless we also found that this lack of jurisdiction constituted such a fundamental unfairness in petitioners' trials that their convictions could not stand.
 
 
 14
 But we do not reach this constitutional issue as we find that petitioners have failed to establish that § 812 deprived the Supreme Court of jurisdiction. In addressing this question of state law it hardly need be said that the role of a federal court is a modest one. Section 812 reflects a state policy concerning the appropriate allocation of jurisdiction between the New York Family Court and the criminal courts, and with this policy, and its elaboration and effectuation in the course of case by case adjudication, the federal courts have no direct concern. An occasion for possible federal intervention arises only if it is determined that § 812 has vested jurisdiction over a given case in the Family Court, and yet a conviction has been secured in a criminal court. Proper respect for the primary role of the New York courts in interpreting that state's Family Court Act policy, as well as the desirability of avoiding the premature confrontation of a sensitive constitutional issue, counsel that the federal courts refrain from deciding unresolved issues concerning the construction of § 812. Cf. Martin v. Creasy, 360 U.S. 219, 224, 79 S.Ct. 1034, 3 L.Ed.2d 1186 (1959); Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 27-28, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). The resolution of these issues should be left to the state courts upon further post-conviction proceedings, since there is no indication that requiring such proceedings would be "unnecessarily time-consuming" or unduly "burdensome." Roberts v. LaVallee, 389 U.S. 40, 43, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967) (per curiam).
 
 
 15
 Thus, because the task of construing § 812 should be left to the New York courts, we regard our responsibility in these proceedings as limited to a determination of whether existing state law clearly demonstrates that the New York Supreme Court lacked jurisdiction over these petitioners. Only if the lack of jurisdiction were established would we proceed to a decision on the merits of petitioners' due process claims.
 
 
 16
 We turn, then, to an analysis of the application of § 812, as interpreted to date by the New York courts, to the facts of these two petitions.
 
 III. STATE LAW
 A. Petitioner Herrington
 
 17
 The indictment against petitioner Herrington charged him with murder for the shooting of his mother-in-law and attempted murder for the shooting of his wife; both shootings occurred virtually simultaneously. Petitioner admits that the murder count, which resulted in a conviction of first degree manslaughter, was not subject to the jurisdiction of the Family Court. Brief for Petitioners, at 14. Homicide is not included within the indicated meaning of "assault" in § 812. Furthermore, there is considerable doubt that the mother-in-law, who did not reside with petitioner or his wife, would fall within the statutory coverage of "members of the same family or household." See People v. Williams, 24 N.Y.2d 274, 281, 300 N.Y.S.2d 89, 94, 248 N.E.2d 8 (1969); but cf. People v. Keller, 37 Misc.2d 122, 234 N.Y.S.2d 469 (Dist. Ct.1962).
 
 
 18
 Petitioner does contend that the attempted murder charge, which resulted in a conviction of second degree assault, was within the exclusive original jurisdiction of the Family Court under § 812. For this reason he claims that his conviction of assault is void and, further, that the joint trial of this count with the murder count so prejudiced his defense of the latter charge that reversal of his manslaughter conviction is required as well. Cf. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); People v. Williams, 24 N.Y.2d 274, 287, 300 N.Y.S.2d 89, 99, 248 N.E.2d 8 (1969). We find, however, that the jurisdiction of the Family Court over an attempted murder charge, under the circumstances of Herrington's closely related murder charge, has not been establishd by New York law.
 
 
 19
 It is settled that the Family Court's jurisdictional grant under § 812 extends to "any assault, felonious as well as petty." People v. Johnson, 20 N.Y.2d 220, 223, 282 N.Y.S.2d 481, 484, 229 N.E.2d 180, 182 (1967). The Court of Appeals in Johnson noted that where a Family Court judge abuses his discretion by retaining jurisdiction over "truly criminal conduct" the state has a remedy by way of appeal to obtain a transfer of such a case to a criminal court.
 
 
 20
 But Johnson does not finally settle whether a charge of attempted murder would be categorized as a felonious assault for the purposes of § 812. Since murder itself is not within the assault clause of § 812, might not an attempt to commit this crime also be excluded? This was the conclusion of the only New York judge to date who has expressed an opinion on the merits of petitioner's contention, Monroe County Judge Harry Rosenthal, who dismissed his application for a writ of error coram nobis with this statement:
 
 
 21
 "Section 812 * * * does not encompass crimes of killing, or attempting to kill by the members of the same family household where the element of premeditation and deliberation is an integral and necessary element of the charge." Unpublished decision filed June 2, 1967.
 
 
 22
 Any doubt concerning the continued validity of Judge Rosenthal's holding in light of the later Johnson opinion should be resolved by the New York courts, and not by this Court. One lower court, we note, apparently has reached a result at odds with Judge Rosenthal's holding. See Montalvo v. Montalvo, 55 Misc.2d 699, 286 N.Y.S.2d 605 (Fam.Ct.1968); but cf. People v. Williams, 24 N.Y.2d 274, 286, 300 N.Y.S.2d 89, 98, 248 N.E.2d 8, 14 (1969) (if an assault, "when combined with additional conduct, establish[es] a different crime, that crime is not necessarily also within the exclusive jurisdiction of the Family Court").
 
 
 23
 There is another ground which sustains the jurisdiction of the Supreme Court which tried petitioner Herrington. Even if we assume that the attempted murder charge, standing alone, would have constituted an "assault" within § 812, here it was joined to a charge of murder which arose out of the same chain of events. Certainly it would not be irrational for the New York courts to hold that once a homicide has been committed, any family offense arising out of the same sequence of events is subject to the criminal jurisdiction of the Supreme Court for trial together with the homicide charge. This form of joinder of charges "for two or more acts or transactions * * * constituting parts of a common scheme or plan, or * * * constituting crimes of the same or a similar character," is authorized under New York law, N.Y. Code Crim.Pro. § 279 (McKinney 1958), and thus far no court has ruled that § 812 bars use of this procedure, even though the lesser crime is a family offense.
 
 
 24
 The case of People v. Williams, 24 N.Y.2d 274, 300 N.Y.S.2d 89, 97, 248 N.E.2d 8 (1969), indicates only that it is improper for a criminal court to retain jurisdiction over charges which depend for their criminality on the commission of an offense — in Williams an assault — which is clearly within the jurisdiction of the Family Court. In Williams the assault was the principal crime, with the remaining charges constituting no more than preliminary acts leading up to the assault. In Herrington's case, however, the assault was committed in conjunction with a homicide, which is clearly not within the Family Court's jurisdiction, and which transcends and colors the criminality of the assault charge. Just as in Williams jurisdiction over the principal assault count carried with it jurisdiction over the dependent lesser charges, so here the Supreme Court's jurisdiction over the homicide charge may have carried with it jurisdiction over the closely related assault charge.
 
 
 25
 Since petitioner Herrington has not established that under New York law, as it now stands, the Supreme Court lacked jurisdiction over his case, we do not reach his due process claim on the merits.
 
 B. Petitioner Marshall
 
 26
 There is no New York authority in support of petitioner Marshall's contention that sodomy and incest, the crimes with which he was charged and convicted, are "assaults" within the meaning of § 812 of the Family Court Act. All of the courts which have examined the question have concluded that these acts fall within the criminal jurisdiction of the Supreme Court. People ex rel. Doty v. Kreuger, 58 Misc.2d 428, 295 N.Y.S.2d 581, aff'd, App.Div.2d Dept., 302 N.Y.S.2d 605; People v. Fuentes, 51 Misc.2d 354, 273 N.Y.S.2d 321 (Sup.Ct.1966); Seymour v. Seymour, 56 Misc.2d 546, 289 N.Y.S.2d 515 (Sup.Ct.1968); People v. Gardner, N.Y. City Crim.Ct., N.Y.L.J., Sept. 19, 1967, p. 20, col. 7. Thus the earlier New York cases cited by petitioner which define the term assault in different contexts, e. g., People v. Gibson, 232 N.Y. 458, 459, 134 N.E. 531 (1922), are not persuasive. Thus petitioner Marshall has failed to demonstrate that the Supreme Court lacked criminal jurisdiction over his acts.
 
 IV. CONCLUSION
 
 27
 With respect to both petitions our point is not that New York law will eventually be resolved by the Court of Appeals against petitioners' construction of § 812, but only that state law as it stands now does not establish the asserted lack of jurisdiction of the Supreme Court with the clarity necessary to make appropriate our adjudication of the underlying due process claim. Petitioners remain free, of course, to seek further adjudication of their claims concerning § 812 in the state courts through the available post-conviction remedies. And, we note, if either petitioner's interpretation of the Family Court Act is sustained by the New York courts, presumably these same courts will afford that petitioner a remedy from his conviction upon an application for a writ of error coram nobis. See, e. g., People v. Pieters, 26 A.D.2d 891, 274 N.Y.S.2d 664 (4th Dept.1966), aff'd, 20 N.Y.2d 691, 282 N.Y.S.2d 760, 229 N.E.2d 441 (1967) (per curiam).
 
 
 28
 Both petitioners briefly raise an equal protection objection to any interpretation of § 812 which would not confer original jurisdiction over their acts in the Family Court. But we find that none of the distinctions presented between their cases and prior New York authority, if ultimately adopted by the New York courts, would constitute an irrational or invidious application of § 812, for all reflect reasonable allocations of jurisdiction between the Family Court and the criminal courts. Furthermore, the equal protection claim is premature since New York law is not finally resolved on the points concerning § 812 raised by petitioners.
 
 
 29
 Jeffrey Glen, Esq., who represented both of these petitioners on appeal by our appointment, has our appreciation for his excellent brief and argument, which have been of great assistance to the Court.
 
 
 30
 The orders of the district court dismissing these two petitions are affirmed.
 
 
 
 Notes:
 
 
 *
 Sitting by designation