**UNITED STATES of America,**
**Appellant,**

**v.**

**Clifford KERLEY, Defendant–Appellee.**

No. 04–4537–CR.

United States Court of Appeals,
Second Circuit.

Argued: May 31, 2005.
Decided: July 28, 2005.

Harry A. Chernoff, Assistant United States Attorney, for David N. Kelley, United States Attorney for the Southern District of New York, New York, N.Y. (Peter G. Neiman, on the brief), for Appellant.

Henry E. Mazurek, Law Offices of Gerald Shargel, New York, NY, for Defendant–Appellee.

Eliot Spitzer, Attorney General of the State of New York (Michelle Aronowitz, Deputy Solicitor General, and Benjamin N. Gutman, Assistant Solicitor General, of counsel), New York, NY, for amicus curiae the State of New York, in support of Appellant the United States of America.

Michael A. Cardozo, Corporation Counsel of the City of New York (Larry A. Sonnenshein and Sharyn Michele Rootenberg, of counsel), New York, NY, for amicus curiae the City of New York, in support of Appellant the United States of America.

Before: McLAUGHLIN, STRAUB, and HALL, Circuit Judges.

MCLAUGHLIN, Circuit Judge.

The Government appeals from the dismissal of a one-count information in the Southern District of New York (Jones, *J.*). The information charged Clifford Kerley with violating the Deadbeat Parents Punishment Act (the "DPPA"), 18 U.S.C. § 228, which criminalizes the failure to pay child support in certain instances. The district court dismissed the information, holding that the support order Kerley failed to comply with was entered by a New York Family Court Hearing Examiner who lacked subject matter jurisdiction. *United States v. Kerley*, No. 02 CR. 1529(BSJ), 2004 WL 1555119 (S.D.N.Y. July 9, 2004). We now hold that defendants charged with violating the DPPA cannot collaterally challenge the subject matter jurisdiction of the state court that entered the underlying support order.

Thus, we vacate and remand the case for further proceedings.

## BACKGROUND

In 1988, Clifford Kerley had a brief relationship with Judith Lopez, the apparent result of which was the birth of twin girls in New York about a year later. Kerley and Lopez ended their relationship before the twins' birth.

In 1990, the Commissioner of Social Services for the City of New York commenced a proceeding against Kerley in New York State Family Court. The Commissioner sought support payments for the twins on behalf of their mother, who had become a welfare recipient. After Kerley's initial appearance before a Hearing Examiner, at which Kerley denied paternity, the Hearing Examiner ordered blood tests for Kerley, Lopez, and the children in order to determine paternity.

In May 1990, Lopez and the children appeared for their blood tests; Kerley did not. He also failed to appear for the next scheduled court date in July 1990. Despite Kerley's absence, a Family Court judge heard testimony and entered orders of filiation with respect to each child.

The Family Court judge remanded the case to the Hearing Examiner for entry of an appropriate final support order. This he did without the formality of first entering a temporary support order. The very same day that the orders of filiation were entered, the Hearing Examiner held an inquest and entered a final support order. The support order, which remains in effect, requires Kerley, *inter alia*, to pay a total of $737 per month in child support.

According to Kerley, he attempted to attend the July 1990 hearing but, due to complications with his wife's pregnancy, he arrived after the orders of filiation and

support had been entered, and the court refused to recall his case.

Kerley has consistently failed to meet his court-ordered child support obligations. Shortly after the support order was entered, he moved to Indiana with his wife and their children. While his wages in Indiana were occasionally garnished, such garnishment only amounted to about $7,000.

In 1995, Kerley filed a motion in Family Court seeking to vacate the support order, offering "illness" as his explanation for missing the July 1990 court appearance, an excuse different from the one he now tenders. A Family Court judge denied his motion.

By 2002, Kerley owed more than $100,000 in child support. In July of that year, he was arrested for willfully failing to pay child support in violation of the DPPA. He waived indictment and was charged in a one-count information in the Southern District of New York.

In 2003, Kerley moved to dismiss the information on several grounds, including his claim that the Hearing Examiner lacked subject matter jurisdiction to enter the support order. In 2004, the district court agreed that the support order was invalid and therefore granted Kerley's motion to dismiss the information. *United States v. Kerley*, No. 02 CR. 1529(BSJ), 2004 WL 1555119 (S.D.N.Y. July 9, 2004).

This appeal followed.

## DISCUSSION

The Government challenges the district court's dismissal of the information on two independent grounds. First, the Government argues that the DPPA does not permit collateral challenges to support orders on any ground, including subject matter jurisdiction. Second, the Government argues that even if Kerley could mount a collateral challenge, the Hearing Examiner had subject matter jurisdiction to enter the support order.

■ Because the district court's dismissal of the information involves questions of law, we review the dismissal *de novo*. *United States v. Leyland*, 277 F.3d 628, 631 (2d Cir.2002).

I. *Collateral Challenges to Support Orders in DPPA Prosecutions*

Every circuit that has addressed the issue has stated that defendants in DPPA prosecutions cannot collaterally challenge the substantive merits of the underlying support order.[1] *See United States v. Bigford*, 365 F.3d 859, 869 (10th Cir.2004); *United States v. Molak*, 276 F.3d 45, 50–51 (1st Cir.2002); *United States v. Faasse*, 265 F.3d 475, 488 n. 11 (6th Cir.2001); *United States v. Kramer*, 225 F.3d 847, 851 (7th Cir.2000); *United States v. Brand*, 163 F.3d 1268, 1275–76 (11th Cir. 1998); *United States v. Bailey*, 115 F.3d 1222, 1232 (5th Cir.1997); *United States v. Johnson*, 114 F.3d 476, 481 (4th Cir.1997). Similarly, we have earlier noted that the DPPA "accepts the validity of the State court judgment and the family policies that judgment embodies." *United States v. Sage*, 92 F.3d 101, 107 (2d Cir.1996).

While the case law is clear with respect to *merits-based* collateral challenges in DPPA prosecutions, Kerley challenges the underlying support order on the basis of *subject matter jurisdiction*. The parties have not cited nor have we found any

---

1. The DPPA is the successor to the Child Support Recovery Act (the "CSRA"). The operative language of the CSRA is substantively the same as the DPPA. Thus, cases interpreting and applying the CSRA are applicable to this case, and we cite those cases herein as if they were DPPA cases. *See United States v. Bigford*, 365 F.3d 859, 863 n. 1 (10th Cir.2004).

reported cases addressing Kerley's challenge. The Seventh and Tenth Circuits, however, have held that defendants charged with violating the DPPA can collaterally challenge the *personal* jurisdiction of the court that issued the underlying support order. *See United States v. Bigford*, 365 F.3d 859 (10th Cir.2004); *United States v. Kramer*, 225 F.3d 847 (7th Cir. 2000).

■ Here, the district court recognized that collateral challenges to support orders are generally not permitted in DPPA prosecutions. It held, however, that the language of the DPPA allows for collateral challenges to support orders based on lack of subject matter jurisdiction. It buttressed this holding by looking to the "traditional rule" that judgments entered by a court lacking subject matter jurisdiction are subject to collateral attack. We do not agree.

A. *The Plain Language of the DPPA*

Under the DPPA, any person who "willfully fails to pay a support obligation with respect to a child who resides in another State, if such obligation has remained unpaid for a period longer than 2 years, or is greater than $10,000," commits a felony. 18 U.S.C. § 228(a)(3). The statute defines "support obligation" as "any amount determined under a court order or an order of an administrative process pursuant to the law of a State or of an Indian tribe to be due from a person for the support and maintenance of a child or of a child and the parent with whom the child is living." *Id.* § 228(f)(3).

In wrestling with the statute, the district court focused on the definition of "support obligation," particularly the phrase "pursuant to the law of a State." The district court found that this phrase "requires that the underlying order must be lawful in order to form the basis of a DPPA prosecution; otherwise, the statutory language

would be superfluous." The court concluded that while a defendant cannot collaterally challenge a support order "as a general matter," a "collateral attack ought to be permitted where the court rendering the underlying support order did not have jurisdiction."

In holding that the DPPA allows collateral challenges to support orders based on *personal* jurisdiction, the Tenth Circuit in *Bigford* interpreted the phrase "pursuant to the law of a State" in the same fashion as the district court has done here. *Bigford*, 365 F.3d at 869. To give "operative effect" to the language and at the same time foreclosing collateral challenges based on "substantive issues of family law," the *Bigford* court interpreted the DPPA as "permitting collateral challenges based on *jurisdictional* issues." *Id.* at 869–70.

While we do not decide here whether lack of *personal* jurisdiction is ever cognizable as a basis for attacking a support order underlying a DPPA prosecution as a constitutional matter, we do not agree with the district court's and the Tenth Circuit's holding that the language of the statute itself permits jurisdictional challenges. Both courts recognized that the substantive merits of a support order cannot be re-litigated (or litigated for the first time) in a DPPA prosecution, and thus limited collateral challenges to jurisdictional issues. Yet, if the statutory language the district court and *Bigford* relied upon— "pursuant to the law of a State"—allows collateral challenges based on jurisdiction, we fail to see how that same language does not also allow collateral challenges based on substantive grounds. To interpret the DPPA as the district court and the Tenth Circuit did would require us to read into the statute a word—jurisdictional—that is not otherwise there.

■ Instead, we interpret the statute in a manner that gives operative effect to the

statute's language while at the same time is consonant with both the case law and general rules of statutory construction. Under the last antecedent rule, "a limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas,* 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003). Following this well-established rule, we read "pursuant to the law of a State" to modify only "administrative process," the phrase it immediately follows in the statute. As so interpreted, the DPPA distinguishes between administrative processes established by state law (such as the use of hearing examiners) and informal administrative processes (such as mediation or voluntary arbitration).[2] Accordingly, if Kerley's child support obligations had arisen solely from a private mediation, perhaps he could mount a challenge under the definition of "support obligation." But the administrative process that created his support obligation was conducted "pursuant to the law of a State."

Our interpretation of the DPPA accords with other federal statutes regarding child support. The DPPA is part of a larger federal scheme of support obligation enforcement. The Full Faith and Credit for Child Support Orders Act requires states to "enforce ... a child support order made consistently with this section by a court of another State." 28 U.S.C. § 1738B(a)(1). An order is made "consistently with this section" if the issuing court had both personal and subject matter jurisdiction. *Id.* § 1738B(c). Additionally, in order to receive certain federal funds related to child support enforcement, states must adopt the Uniform Interstate Family Support Act, 42 U.S.C. § 666(f), which requires a

state to enforce another state's child support order "if the issuing tribunal had jurisdiction," *see, e.g.,* N.Y. Fam. Ct. Act § 580–603(c).

These closely related statutes make clear that when Congress intended to allow collateral challenges to support orders based on jurisdictional issues, it knew how to do so. *Cf. Gozlon–Peretz v. United States,* 498 U.S. 395, 404, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991) (" '[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " (quoting *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983))).

The Seventh Circuit considered these related federal statutes and found that it "makes no sense" that Congress would allow a defendant in a civil enforcement action to challenge the personal jurisdiction of the court that entered the enforcement order but not allow a criminal defendant to do the same. *Kramer,* 225 F.3d at 857. We think, however, that Congress could have decided rationally that there should be a broad criminal net to ensnare deadbeat parents such as Kerley. Indeed, allowing collateral jurisdictional challenges in civil cases but not in criminal cases is certainly not unprecedented. *See infra* I.B.

A DPPA case "turns only on the defendant's violation of a state court order," and not on whether that order is valid under state law. *Bailey,* 115 F.3d at 1232. Thus, we conclude that the plain language

---

**2.** Kerley urges us to disregard the last antecedent rule in this case, noting that it can be "overcome by other indicia of meaning." *See Barnhart,* 540 U.S. at 26, 124 S.Ct. 376. No such indicium, however, is present here. And while the rule is not an absolute, *United States*

*v. Barnes,* 295 F.3d 1354, 1360 (D.C.Cir. 2002), it has the notable advantage in this case of leading to an interpretation of the DPPA that not only comports with case law regarding collateral challenges, but also makes eminent sense.

of DPPA forecloses Kerley's attempt to challenge collaterally the subject matter jurisdiction of the Hearing Examiner.[3]

### B. *The So–Called "Traditional Rule"*

In interpreting the statute, the district court viewed the DPPA through the prism of the "traditional rule" that "American courts have traditionally invalidated or denied recognition to judgments entered without subject matter jurisdiction." If confined to civil cases, we certainly agree with the district court's formulation of the "traditional rule." *See United States v. Forma*, 42 F.3d 759, 762 (2d Cir.1994) (noting that default judgments are generally vulnerable to collateral attack on the basis of lack of subject matter jurisdiction).

In criminal cases, however, the rule often differs. For example, a defendant charged with criminal contempt cannot challenge the subject matter jurisdiction of the court that entered the violated order. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 292–93, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *see also United States v. Terry*, 17 F.3d 575, 579 (2d Cir.1994) (stating that a defendant charged with criminal contempt "generally is barred from collaterally attacking the constitutionality" of the court order he is charged with violating). Likewise, a defendant charged with being a felon in possession of a firearm may not challenge collaterally a previous conviction on any grounds. *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). And criminal defendants cannot raise collateral challenges, even those based on constitutional issues (save one), to previous convictions used in

sentencing enhancements. *Custis v. United States*, 511 U.S. 485, 487, 491, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994) (holding that defendants cannot attack collaterally a previous conviction used to enhance a sentence under the Armed Career Criminal Act "with the *sole* exception of convictions obtained in violation of the right to counsel" (emphasis added)).

Background principles of law in effect at the time Congress passes a statute can be useful in statutory interpretation. *See United States v. Texas*, 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993). In this case, however, they are, at most, ambiguous with respect to whether collateral attacks based on subject matter jurisdiction should be permitted in DPPA prosecutions. In any event, because the language of the DPPA is unambiguous, we can end our analysis there. *See Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993) ("The starting point in interpreting a statute is its language, for if the intent of Congress is clear, that is the end of the matter." (internal quotation marks and alterations omitted)).

### C. *Due Process*

■ Kerley also argues that he has a due process right to mount a collateral challenge to the support order based on lack of subject matter jurisdiction. The district court did not consider this argument, which we now reject.

Kerley's argument relies on the Supreme Court's decision in *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct.

---

**3.** Kerley also argues that the rule of lenity requires that we interpret the DPPA to allow him to mount a collateral attack on the support order based on subject matter jurisdiction. "[T]he touchstone of the rule of lenity is statutory ambiguity." *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980) (internal quotation marks omitted). Because the DPPA's language is not ambiguous, the rule of lenity has no place in our analysis here. *See Chapman v. United States*, 500 U.S. 453, 463, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991).

2148, 95 L.Ed.2d 772 (1987). In that case, an alien charged with illegally reentering the United States after a deportation attempted to challenge the validity of the underlying deportation order. The Court held that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction," due process requires that "there must be *some* meaningful review of the administrative proceeding." *Id.* at 837–38, 107 S.Ct. 2148. Thus, "where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." *Id.* at 838, 107 S.Ct. 2148.

Kerley's reliance on *Mendoza–Lopez* is misplaced. In that case, the Supreme Court expressly concerned itself with the "unavailability of effective judicial review" of the deportation order at issue. *Id.* at 841, 107 S.Ct. 2148. Here, it is undisputed that Kerley knew about the support order the day it was entered, and he does not argue that he was foreclosed from appealing the order. Indeed, Kerley could have appealed the order based on the very same jurisdictional issues he raises now. *See* N.Y. Fam. Ct. Act § 439(e) (permitting appeals of determinations made by hearing examiners). Put simply, Kerley had available all the process due under *Mendoza–Lopez.* Thus, there is no constitutional bar to denying him an opportunity to challenge collaterally the subject matter jurisdiction of the Hearing Examiner for the first time well over ten years later. *See Brand,* 163 F.3d at 1276 (holding that disallowing collateral challenges in DPPA prosecutions "does not implicate due process concerns").

Even if *Mendoza–Lopez* were to apply in this case, it would not help Kerley. In *United States v. Johnson,* a defendant charged with failing to pay a support obligation attempted to rely on *Mendoza–Lopez* to collaterally challenge a support order. 114 F.3d at 482–83. The Fourth Circuit stated that *Mendoza–Lopez*—assuming without deciding that it applied— "only provides a narrow means for challenging, on due process grounds, the *constitutional* validity of the predicate order in issue." *Id.* (emphasis added). In this case, Kerley is not challenging the support order on constitutional grounds. While *personal* jurisdiction is of course a required component of due process, *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), the *subject matter* jurisdiction of the Hearing Examiner is wholly an issue of state statutory law. The application—or misapplication— of state subject matter jurisdiction rules raises no constitutional issues, due process or otherwise. *See United States ex rel. Roche v. Scully,* 739 F.2d 739, 741–42 (2d Cir.1984) (holding that a violation of New York's allocation of subject matter jurisdiction "does not create a federal constitutional issue"); *United States ex rel. Herrington v. Mancusi,* 415 F.2d 205, 209 (2d Cir.1969) (noting that "federal courts have no direct concern" in the allocation of jurisdiction in state courts); *cf. Ins. Corp. of Ireland,* 456 U.S. at 702, 102 S.Ct. 2099 (noting that in federal courts, subject matter jurisdiction is an Art. III and statutory requirement, not a due process requirement).

## II. *The Hearing Examiner's Subject Matter Jurisdiction*

The State and City of New York each filed an amicus brief in this case, both—in the voice of Cassandra—prophesying the disastrous implications of the district court's holding. Of course we need not reach the question whether the Hearing

Examiner did in fact lack jurisdiction. Because of the importance of this issue to these amici, however, we do not deem it amiss to express our views for the benefit (hopefully) of the New York Family Court bench and bar.

Pursuant to section 411 of the New York Family Court Act (the "FCA") in effect in 1990, the Family Court has "exclusive original jurisdiction over proceedings for support." FCA § 411. The FCA provides for the creation of "support parts" within the Family Court and directs that "all" support proceedings be "originated in or be transferred to" the support part to be "heard by hearing examiners." *Id.* § 117(c). Hearing examiners are "empowered to hear, determine and grant any relief within the powers of the court" except as otherwise provided. *Id.* § 439(a).

According to the version of section 439 of the FCA in effect when Kerley's support order was entered, "where the respondent denies paternity, . . . the hearing examiner shall not be empowered to determine the issue of paternity, but shall

transfer the proceeding to a judge of the court for a determination upon the issue of paternity." *Id.* § 439(b). When a Family Court judge enters an order of filiation, "the judge shall make a final or temporary order of support. If a temporary order is made the proceeding shall be returned to a hearing examiner" for a determination of a final support order.[4] *Id.*

Here, when Kerley contested paternity, the Hearing Examiner referred the case to a Family Court judge as required by the FCA. After the Family Court judge entered orders of filiation, he returned the case to the Hearing Examiner for the entry of a final support order without first entering a temporary support order. The City of New York informs the Court that this procedure is the common practice in Family Court. Nevertheless, the district court found that the Hearing Examiner lacked subject matter jurisdiction to enter the final support order precisely because the Family Court judge failed to enter a temporary support order, as required by

---

4. In 2004, New York amended section 439. The amendment deleted the language from subsection (b) that required a Family Court judge to enter a temporary support order after entering an order of filiation. Act of Aug. 10, 2004, ch. 336, § 1, McKinney's 2004 Session Law News of New York. Thus, the current version of section 439 states that a Family Court judge "may make a final determination of the issue of support" after determining paternity or may return the case to a support magistrate (the term now used in the FCA instead of hearing examiners) for further proceedings. FCA § 439(c).

On June 21, 2005, the New York Legislature passed another amendment to section 439, which further clarifies that after entry of an order of filiation by a Family Court judge, "the judge, or support magistrate upon referral from the judge, shall be authorized to immediately make a temporary or final order of support." 2005 New York Senate Bill No. 5223–A. According to the New York Senate Introducer's Memorandum of Support, the

new amendment is expressly in response to the district court's decision in this case and "would simply mirror current practice in every Family Court statewide and would reflect the universal understanding of Family Court professionals regarding the current law governing the authority of support magistrates." New York Senate Introducer's Memorandum in Support of Senate Bill No. 5223–A (stating that the amendment is necessary "[i]n order to prevent future cases like [United States] v. Kerley"). The Introducer's Memorandum calls the district court's decision in this case "arguabl[y] . . . a serious misinterpretation of both the letter and the intent of the New York State statutory framework," and states that it "may have serious implications for the enforceability of untold numbers of child support orders." *Id.*

Other than the citations in this footnote, the citations in this opinion to the FCA are to the version in effect in 1990 at the time the support order was entered against Kerley.

section 439(b), before returning the case to the Hearing Examiner. We disagree.

Without question, the Family Court judge did not comply with section 439's unambiguous dictate that he first enter a temporary support order before returning the case to the Hearing Examiner. Nothing in the FCA, however, compels the conclusion that this procedural error has any effect on the jurisdiction of the Hearing Examiner. Indeed, to read the FCA as the district court did creates an arbitrary jurisdictional rule with no apparent purpose.

Moreover, the district court's reading of section 439 ignores the purpose of temporary support orders. New York requires a temporary support order "in an amount sufficient to meet the needs of the child," FCA § 434, in all cases pending an award of a final support order. This is because the State recognizes that a child's need for parental support cannot wait until the end of the support proceedings. *See* Governor's Program Bill Memorandum, New York State Support Enforcement Act of 1986, ch. 892, at 1 ("Bill Memorandum") (stating that the purpose of requiring temporary support orders is to "[e]nsure that there is adequate support for children without a delay of a long period before a final judgment or order is granted").

An exception to this rule arises in cases in which the respondent denies paternity. In such cases, a temporary support order must await an order of filiation. FCA § 439(b). In order to ensure that temporary support orders are granted immediately after paternity is established, the version of section 439(b) in effect in 1990 provided that whoever issues the order of filiation—whether it be a judge or a hearing examiner—should also enter a temporary support order. *See* Bill Memoran-

dum at 6 (stating that section 439 requires a Family Court judge who determines paternity to enter a temporary support order in order to "assure that support is given to a child by the person determined to be his father as soon as possible, subject to further proceedings before a hearing examiner when appropriate"). Thus, the requirement that a Family Court judge enter a support order immediately after determining paternity is clearly intended for the protection of the child and is *not* jurisdictional in nature. To read section 439 otherwise would have the perverse effect of benefitting deadbeat parents such as Kerley while harming the very children the statute was intended to protect. *See Yerdon v. Henry,* 91 F.3d 370, 376 (2d Cir. 1996) ("Where an examination of the statute as a whole demonstrates that a party's interpretation would lead to absurd or futile results . . . plainly at variance with the policy of the legislation as a whole, that interpretation should be rejected." (internal quotation marks omitted)).

## CONCLUSION

Because Kerley's challenge to the Hearing Examiner's subject matter jurisdiction does not lie, we reverse the district court's dismissal of the information and remand for further proceedings.